## THE WASHINGTON GAS LIGHT CO.

*v.*

## ECKLOFF.

---

Negligence; Instructions to Jury; Burden of Proof.

1. Where an inspector of water meters in the employment of a municipality becomes injured by an explosion of gas while inspecting a meter on the premises of a gas light company, whose contract duty to the municipality is to keep the meter in good condition and subject to inspection, while there is no privity of contract between the inspector and the company, the contract with the municipality creates a right which affords him protection against the negligence or want of reasonable care of the company, and entitles him to maintain an action for such injuries if negligence is shown.

2. An instruction to the jury, granted at the instance of the plaintiff, in such a case, is erroneous, which states that if the injuries of the plaintiff were caused by an explosion of gas, which was unusual, and a thing which ought not to occur in the ordinary and proper management of the affairs of the defendant, then the fact of such explosion is *prima facie* evidence of negligence on the part of the defendant, and is sufficient to entitle the plaintiff to recover, unless the defendant overcomes this presumption and satisfies the jury by a preponderance of evidence that such explosion was caused by no negligence or carelessness on its part. Such an instruction imposes upon the defendant the burden of proving a negative, and disregards the rule that in actions founded upon the alleged negligence of the defendant, the burden of proof is on the plaintiff.

No. 288. Submitted April 11, 1894. Decided October 11, 1894.

Hearing on a bill of exceptions by the defendant in an action of damages for personal injuries. *Judgment reversed and cause remanded.*

The Court in its opinion stated the case as follows:

This action was brought by the plaintiff, Christian F.

Eckloff, to recover of the defendant, the Washington Gas Light Company, damages for an injury sustained by the former in consequence of the alleged negligence of the latter, in failing to prevent the accumulation of inflammable gas in a pit on the premises and under the control of the defendant, which the plaintiff, in discharge of duty to his employer, was required to visit to inspect and take the registry of the water meter fixed in said pit.

The facts of the case, as they may be gathered from a large mass of matter, consisting of questions to and answers of witnesses, the most of which is quite immaterial, are these :

The defendant is a gas light company, with its buildings and manufacturing plant located on the bank of the Eastern Branch of the Potomac River, in the city of Washington. In May, 1888, the company applied to the Commissioners of the District of Columbia for permission to construct a water main leading into its premises; and on May 19th of that year, this request was granted, subject to the condition *that all water used should be measured by a water meter,* and that the main, when constructed, should become a part of the public water supply system of the District. These conditions were accepted by the defendant, and the water main was constructed by it. Four kinds of meters had been adopted by the District Commissioners, and the water consumer had his option of selecting any one of these four. The only other control that the District Commissioners exercised over the construction of the meter or its location, was to see that it was so placed that it could be readily inspected, and to see that it was registering correctly. In every other respect the ownership and control of the meter was in the gas company, the defendant. Prior to the month of August, 1891, the water meter was fixed in a trench or pit in the open yard on the defendant's premises, about six inches below the surface of the ground, and the pit was covered over with heavy flooring, except a

place where the face of the dial was exposed to view, and over which there was a small sliding or trapdoor that could be opened to give a view of the dial of the meter. The trench or pit in which the meter was thus fixed was about eleven and a half feet long, four and a half feet wide, and three feet deep, the sides and ends being constructed of brick and cement.

The District municipal authorities employed two inspectors, the plaintiff being one of them, and the latter had repeatedly inspected and taken the registry of this meter, and had taken the registry of it in July, 1891, though not in August of that year. And in the intermediate time between the July and September taking of the registry of the meter, the defendant had built a shed, for some purposes connected with its works, which covered in the pit or trench in which the meter was placed. This shed was closed at the sides, but open at one end. This was the only change in the condition of the premises made since the plaintiff inspected and took the state of the meter in July; and when he went to inspect and take the registry of the meter in September, 1891, he found this shed erected over the pit, and the shed so dark as to require the use of a light, and he detected in the shed, what he supposed to be, a strong odor of gas. Without proceeding further, he went in search of some of the officials or agents of the company, and found the general superintendent and the clerk, and they all three went to the shed where the meter was located. The superintendent said that the odor was not that of gas, but that it proceeded from " dead gas," and that there was no danger. When the parties reached the pit, both the superintendent and the clerk of the works lighted matches, and were all immediately around and stooping over the small opening, trying to see the face of the dial. It was then that the plaintiff lighted the candle immediately over this small opening, for the purpose of inspecting the meter, but at that instant an explosion occurred,

which severely burnt the plaintiff, and also the superinten-dent and clerk. This explosion was of gas that had accu-mulated in the pit. The difficult or doubtful question of fact in the case was, how did the gas get into the pit? Shortly after the accident, the pavement in the neighbor-hood of the pit, and which covered a gas pipe that extended beyond the wall of the building of the gas works, was dug up and a leak in the gas pipe was discovered of considera-ble size, and which was repaired. It is supposed that the gas percolated through the intermediate earth to the pit; the location of the latter being about thirty feet from the leak. The earth was made earth, and was not very com-pact. There was testimony tending to prove that this gas had been escaping for some time before the accident, and that the engineer at the works called the attention of the acting superintendent of the works to the fact that gas was escaping and had accumulated in dangerous quantities in and about the shed. It was thought, however, that the gas was escaping from a drip pot near the place where the leak was discovered in the pipe.

[At the trial the following prayers for instruction to the jury were granted on behalf of the plaintiff, over the objec-tion of the defendant:

" 1. The water meter and pit wherein it was located and the surrounding premises being the property of the defend-ant and under its control, it became and was the duty of the defendant to exercise ordinary care to keep the same in a safe condition, and if the jury find from the evidence that the plaintiff, on the first day of September, 1891, having the right to be at said pit for the purpose of making an examination of said water meter, and while in the exer-cise of due and proper care, was injured by an explosion occurring in or at said pit, which explosion was caused by some negligence or carelessness on the part of the defendant or some of its agents or employees, then the plaintiff is entitled to recover in this action.

"2. The jury are instructed that if they believe that the injuries to the plaintiff for which he seeks to recover in this action were caused by an explosion of gas in the pit where the water meter described in the evidence was located, which explosion was unusual and a thing which ought not to occur in the ordinary and proper management of the affairs of the defendant, then the fact of such explosion is *prima facie* evidence of negligence on the part of the defendant, and is sufficient to entitle the plaintiff to recover, unless the defendant overcome this presumption and satisfies the jury by a preponderance of the evidence that said explosion was caused by no negligence or carelessness on its part.

"3. The jury are instructed that the burden of showing that the plaintiff was guilty of contributory negligence in this action is upon the defendant, and in determining whether or not the plaintiff, at the time of the accident mentioned in the evidence, was exercising such care and caution as a prudent and careful man would exercise under the same circumstances, the jury may take into consideration the assurance given to the plaintiff by the employees of the defendant that there was then no gas and no danger at the place where the accident occurred, if they find that such assurances were given.

"4. If the jury find from the evidence that the plaintiff is entitled to recover in this action they shall award him such damage as will fairly compensate him for the injuries received by him resulting from the accident described in the evidence for the pain, both physical and mental, which he suffered in consequence thereof and for the expenses which he incurred by reason of said injuries."

The court refused to grant the following prayers for instruction which were submitted on behalf of the defendant:

"1. If the jury have any difficulty in determining that this accident was caused by the explosion of illuminating gas they must find for the defendant.

"2. The jury are instructed that the defendant owed no

duty to the plaintiff, inasmuch as he, being an officer of the Water Department of the District of Columbia, came to the defendant's works without its invitation or inducement, and was obliged to take the risk upon himself of his duties, unless they find that the Gas Company did some deliberate act which caused the injury complained of.

" 3. The jury are instructed that unless they are satisfied that the defendant, through its superintendent or some of its officers, knew of the existence or presence in this pit of illuminating gas manufactured by the said company and negligently suffered it to exist therein without timely notice to the plaintiff, the plaintiff cannot recover, and their verdict must be for the defendant.

" 4. The jury are instructed that if they find from the evidence that the Water Department inspected the water meter after its location and establishment in this pit, and had the same under its constant inspection since its said location up to the time of this accident, then they must find for the defendant, unless they are satisfied that the defendant had, since the last inspection, done some act about its works or grounds which prudent and reasonable men would not do and which caused the accumulation of illuminating gas in this pit.

" 5. The jury are instructed that if they find from the evidence that this water meter, its location, construction, and establishment, had been inspected constantly by the Water Department, by both McIntyre and the plaintiff, Eckloff, then the plaintiff cannot recover, unless the jury find that the defendant omitted to do something which prudent and reasonable men, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, and that such omission on its part caused the accumulation of illuminating gas in this pit.

" 6. The jury are instructed that if the defendant's servants, the officers of the company, knew that the nearest gas pipe or main was about 27 feet from this pit they must

find for the defendant, unless they find from the evidence hat at or before the time of this accident they knew of the existence of a leak, or had reasonable cause to suppose the same, in this said pipe or main, and that, further, from their experience or knowledge of the properties of gas, had reasonable cause to believe that gas escaping from this said leak could penetrate into this pit.

" 7. The jury are instructed that if the defendant's servants, the officers of the company, discovered after this said accident a leak in the pipe at the place called the "drip," and that they knew that the so-called "drip" was about 33 feet from the pit where the water meter was situated, their verdict must be for the defendant, unless they find that at or before the time of this accident they knew of the existence of this leak, or had reasonable cause to suppose the same, at this so-called "drip," and that, further, from their experience or knowledge of the properties of gas, had reasonable cause to believe that gas escaping from this said leak at the drip could penetrate into this pit.

" 8. The jury are instructed that the defendant company is not liable in this action unless they find that the District Commissioners, who had required the erection of this meter, had given the said company notice that the water meter as established at the defendant company's works was in a dangerous condition, unsafe for inspection, and a menace to their officers, and requiring it to remedy the defect, to remove the cause of danger, and put the same in safe condition for inspection and giving it sufficient time to carry out said requirements.

" 9. If the jury find from the evidence that the officers of the defendant, the superintendent of its works and the officer in charge of the yard in which the meter in question was located, were satisfied that there was no gas in the said pit, and in such belief acted in and about such pit in such manner as demonstrated that they were free from all suspicion of gas or any other explosive substance in such pit, they

must find that the explosion in question did not result from any negligence on the part of defendant, but was an unavoidable accident, and their verdict must be for the defendant.

" 10. If the jury believe from the evidence that at the time of the explosion complained of and by which the plaintiff was injured as alleged the plaintiff was accompanied by two of the employees or officers of the defendant, one of whom was the superintendent of the works in which the accident took place, and that both of these employees or officers were injured by said explosion, they must find that the said explosion was not the result of negligence on the part of the defendant or its officers or employees, and that said defendant is not responsible.

"11. If from the evidence the jury find that at or immediately before the explosion complained of an employee of the company struck a light and held it over the pit in which the meter was set and in which the said explosion occurred, and that the superintendent of the works in which said meter was set lighted a match and held it in said pit, they will find that there was no negligence on the part of the defendant; that it had no notice of the presence of gas in said pit, and their verdict must be for the defendant."

As to the third instruction prayed for on behalf of the defendant, the court, of its own motion, and over the objection of the defendant, amended it by inserting after the words " of illuminating gas " the words " or ought to have known it if they had been duly careful," and the said instruction as so amended read as follows:

" The jury are instructed that unless they are satisfied that the defendant, through its superintendent or some of its officers, knew of the existence or presence in this pit of illuminating gas, ' or ought to have known of it if they had been duly careful,' manufactured by the said company, and negligently suffered it to exist therein without timely notice

to the plaintiff, the plaintiff cannot recover and their verdict must be for the defendant."

In refusing to grant the 5th, 6th, and 7th instructions submitted for the defendant, the court stated that it would give a substitute therefor in the charge to the jury.

The following was the charge:

" GENTLEMEN : This case is founded entirely upon alleged negligence on the part of the Washington Gas Light Company, which is said to have produced this suffering and injury to the plaintiff. If there is no injury there is no ground of recovery. If there was negligence and that negligence resulted in this injury to the plaintiff, then he is entitled to recover.

" The first question which you should be informed about is what degree of care it was incumbent upon this defendant to observe in keeping their premises safe.

" I may say generally that it is bound to observe precisely the same degree of care that devolves upon each one of you with respect to your private dwelling ; no more and no less. This obligation is not one of absolute guarantee against any possible accident. If that obligation rested upon all of us with respect to our dwellings, we would be all the time under a very grave responsibility. The wind may blow a brick from your chimney or a shutter from your windows upon somebody's head without the possibility of your suspecting any defect in the construction of your house, and you would be all the time exposed to an indefinite amount of claims if your obligation was one of absolute guarantee against all possible injury upon your premises.

" The law is not so exacting as that, but men ordinarily take a certain degree of care of their houses for their own safety and for the safety of their families, as well as the safety of those who visit them by invitation or by authority. There is an ordinary degree of care which everybody is bound to observe, and that is the degree of care which prudent men ordinarily observe. When that degree of care is

observed and still an accident happens, it is set down to mischance, as being an unavoidable accident.

" Each one of you, I assume, has a dwelling, either owning it or renting it, and you are visited monthly by the gas inspector to look at your meter. If you knew that the gas was escaping and closed up the room where it was until it became full of gas and dangerous, and then allowed the gas inspector to come in there with a lighted candle and be blown up you would be guilty of negligence and would be responsible. If you had such a place as was only accessible by means of a rickety and dangerous staircase and the gas inspector should fall down it you would be responsible, but if you exercised the care that men ordinarily do in such cases, and if you had no ground to suspect there was any danger, but there was some secret defect about which you knew nothing, and an officer entered your premises for the purposes mentioned and was injured, you would not be responsible. In other words, you do not absolutely guarantee your premises to be safe against every accident to those approaching it or entering it.

" That is exactly the degree of care which is required of these defendants. It makes no difference that it is a corporation, either a gas company or a railroad company, they are simply an aggregation of private persons having certain principles upon which they transact business, just as you have stores and shops, and they are obliged to exercise that degree of care which ordinarily prudent men exercise about their residences for the safety of themselves and others who come there and have the right to come there. If they do that they are not responsible for an accident which does not result from the want of such care.

" This extraordinary explosion, happening upon the premises of the defendant, undoubtedly, as I think and as I have been requested to instruct you, does raise the presumption that there was something wrong, and calls upon the defendant to explain it away. If the defendant has satisfied you

that there was no gas in this pit coming from the works of this company, and that the accident resulted from the presence of some other kind of gas which they could not have foreseen and provided against, it is to be set down as a mere accident. It is not the fault of the company if they have explained this matter satisfactorily and have cleared their skirts of negligence, because then the result would have happened notwithstanding the exercise of that degree of care which the law required of them.

" If, however, the accident was due to the presence of illuminating gas there, which did come from the works of this company, it would not absolutely and necessarily follow that they were responsible for it, because it might have happened through causes which they could not have foreseen and provided against, even with due care. It may be that these persons who went to this pit in company with the plaintiff believed that it was perfectly safe, and that there was no gas accumulated there. The very fact that they were there and exposed themselves to the same danger that the plaintiff did, and that they tested the presence of gas there by lighting shavings and matches before he lit his candle, would be pretty strong evidence to show that they really and honestly believed there was no danger at all.

" If you are satisfied of that, the question would be whether that was a negligent belief or a reasonable one.

" On the question, however, whether there was this accumulation of illuminating gas you are to consider first the evidence on the part of the plaintiff—the plaintiff himself—and Mr. King that they had detected the odor of gas on these premises and could not be mistaken about it—that it was somewhere there.

" On the other hand, you are to consider the evidence on the part of the defence that the supposed odor of gas emanated from either the drip or the slack lime or other refuse lime about there and not from the gas ; also the evidence that they opened this trench, which it was very proper they

should do, to ascertain whether there was any gas escaping, and the evidence that they have given that they did not detect any of the usual symptoms of escaping gas along this trench in the discoloration of the earth; that they finally found a leak some twenty-five or thirty feet from this point; also the evidence of the expert that gas would naturally find its way vertically upward through the soil instead of traveling along horizontally in one direction and then in another, crossing to this meter. All this evidence is to be considered by you with reference to the question whether there was illuminating gas there or not.

" But if it was there, then the next question is whether the officers of the defendant were guilty of negligence in not knowing that fact. In the first place, on that subject you are to consider the evidence of Mr. King on behalf of the plaintiff that he had notified some of the officers before this occasion that the odor of gas pervaded those premises, and that there must be a leak somewhere. On the other hand, you have the evidence on behalf of the defendants that with their long experience they did not detect the odor of gas and did not believe it came from that source.

" The question is, Ought they, in the exercise of due care, to have known that there was gas there and where it was and where it came from? It is agreed on all hands that the gas, if it was in this pit, escaped from one or two points— either the bell joint or the drip pipe—both of them a long distance away from this pit.

" The question is, Ought these officers, in the exercise of due care, to have known that there was gas there and to have traced it down to its origin or source? If they ought, then the case is to be considered as if they did know that the gas was escaping from this point, and then the question still would be whether they then ought to have known that it was possible for that gas to escape along those pipes, so as to enter this pit and make it dangerous; or, on the other

hand, would they be justified in thinking that was an impossibility?

"If you find that they were guilty of negligence in these respects the plaintiff would have a right to recover for the consequences of the injury. If you find that they acted as reasonable and prudent men, either in disbelieving the presence of gas there or in disbelieving the possibility of its escaping from this place and travelling along to the pit, then they were not guilty of negligence and the company would not be responsible.

"It is therefore altogether a question of due care on the part of these officers. If there was no gas from their works in this pit, then the verdict must necessarily be for the defendant—that is to say, if in addition to that you find that they had no reason to suspect the accumulation or entry of gas into this pit or danger from any other source.

"But if it was there and was the cause of this accident, then the question is whether its existence there is due to their neglect and oversight.

"On the question of damages I need say nothing. It is left very much to your discretion and it must be left to your sound discretion under all the circumstances. It is impossible to measure an injury of that sort in dollars and cents· If it were left to anybody to say what amount of money he would take to endure an injury like that the damages to be allowed would be beyond the possibility of any defendant to meet them. Therefore that is not a fair test. The question is what would be just and fair under the circumstances to both parties."—REPORTER.]

*Messrs. Webb & Webb* for the plaintiff in error:

1. There was no *duty* owing to the plaintiff by this defendant. In order to maintain an action for a negligent injury it must appear that there was a *legal duty* due from the person inflicting the injury to the person on whom it was inflicted, and that such duty was violated by a want of

ordinary care on the part of the defendant. 16 Am. and Eng. Ency. of Law, 411.

The official status of the plaintiff is precisely similar to that of all other inspectors employed by the District of Columbia, and by the appellant itself. The right of entry or inspection is lodged in the principal, the District of Columbia and the Gas Company for its meter takers, and not in the individual. This right of entry or inspection arises out of the contract to take water or gas, and the individual inspector or meter taker is, therefore, a stranger to the contract, and no duty is owing to him therefor. *Winterbottom* v. *Wright,* 10 Mees. & Wels. 109 ; *Necker* v. *Harvey,* 49 Mich. 517 ; *Losee* v. *Clute,* 51 N. Y. 494 ; *Curtin* v. *Somerset,* 140 Pa. 70. No duty is cast upon the owner to take care of the *licensee* or to see that he does not go to a dangerous place, but he must take his permission with its concomitant conditions and perils, and can not recover for injuries caused by obstructions or pitfalls. *Hounsell* v. *Smyth,* 7 C. B. N. S. 731; *Batchelor* v. *Fortescue,* L. R., 11 Q. B. D. 474 ; *Severy* v. *Old Colony,* 10 Allen, 368 ; *Benson* v. *Balto. Traction Co.,* Ct. of App. of Md., June 21, 1893 ; *Maenner* v. *Carroll,* 46 Md. 193 ; *Parker* v. *Barnard,* 135 Mass. 118.

The *negligence,* which is the gist of the action, must be sought in some " act or omission," the commission of some act *in violation of its duty* to the plaintiff, or some act or *omission of duty* to the plaintiff on the part of the defendant. There being no act of commission charged or shown, the act of negligence was one of *omission,* and consisted in not knowing that gas could penetrate twenty-seven or thirty-three feet under ground and reach this pit or trench. It still remains a question whether the defendant owed this duty to the plaintiff. Where an injury results from an act or omission which could only become tortious on account of the relations which the parties sustained to each other, where the very substance of the wrong complained of, itself,

was the failure to act with due foresight, then the right of action depends primarily upon so fixing the relation of the parties as to show the defendant's obligation, and upon showing further that the harm and injury complained of were such as a reasonable man in the defendant's place should have foreseen and provided against. In such case it is not enough that an accident happened, and that death or injury resulted therefrom. Negligence is not to be presumed upon the fact of an occurrence, the statement of which suggests its anomalous, exceptional and extraordinary character. Ray on Negligence of Imposed Duties, 136.

In all cases where it is sought to hold the owner of property liable for injuries occurring to a stranger, on the ground of negligence, there must be evidence in the case that he was guilty of some act of omission or commission from which the jury might reasonably infer fault on his part.

Nothing less than that will satisfy the demands of the rule of law in such cases. The law is reasonable, and does not demand of the owner of property more than the exercise of ordinary care with respect to the rights of third persons. *Wolf* v. *Kilpatrick,* 101 N. Y. 146 ; *Edwards* v. *N. Y. & H. RR. Co.,* 98 N. Y. 245 ; *Wasson* v. *Pettit,* 117 N. Y. 118 ; *Dougan* v. *Champlain T. Co.,* 56 N. Y. 1 ; *Loftus* v. *Union Ferry Co.,* 84 N. Y. 455 ; *Crafter* v. *Metropolitan RR. Co.,* L. R., 1 C. P. 300 ; *McDonald* v. *Snelling,* 14 Allen, 290. To constitute a negligence in the owner of premises a duty must be shown to have been broken, what this duty was, and how it was broken. It is not sufficient that a careless act has been done by the defendant by which the plaintiff has sustained loss. *Daniel* v. *Met. RR. Co.,* L. R., 5 H. L. 45 ; *Gautret* v. *Egerton,* L. R., 2 C. P. 374 ; *Collins* v. *Selden,* L. R., 3 C. P. 498 ; *Bennett* v. *Railroad Company,* 102 U. S. 577. There was nothing to oblige the defendant to take extra precaution. *North Cent. Rwy. Co.* v. *State,* 54 Md. 113 ; *Skelton's Case,* L. R., 2 C. B. 631. The fact of negli-

gence is for the jury to decide, where there is evidence *legally sufficient* to prove it, but in the absence of such evidence it is the duty of the court to withhold the case from the jury. *Foy's Case*, 47 Md. 76.

The duty of gas companies, even toward members of the community and customers, has been held, in a well considered case, only to be in a state of ample preparation to meet all emergencies quickly. *Holly* v. *Boston Gas L. Co.*, 8 Gray, 123.

2. The judge, in his charge to the jury, erred in stating that—" This extraordinary explosion, happening upon the premises of the defendant, undoubtedly, as I think, and as I have been requested to instruct you, does raise the presumption that there was something wrong, and calls upon the defendant to explain it away." This is assigned as error. The cases in which negligence is presumed from the mere occurrence of the accident casting upon the defendant the burden of explaining it away are divided under three classes. 15 L. R. A. 3.

Injuries to persons in the highway, member of the community, to whom the abutter owes a high degree of duty. Brick falling from bridge. *Kearney* v. *London, etc., Rwy. Co.* L. R. 5 Q. B. 411. Barrel rolled out of warehouse. *Byrne* v. *Boadle*, 2 Hurl. & Colt. 722. Plank falling from defendant's premises. *Clare* v. *Nat. City Bank*, 1 Sweeney, 539. Fall of iron from elevated railroad. *Volkman* v. *Manhattan RR. Co.*, 26 Jones & S. 125. But even in this condition of duty, owing to the uses of the highway, the cases are not entirely harmonious. No presumption of negligence arises from the falling of a door off a car of a passing train upon a bystander. *Case* v. *Chicago, etc., RR. Co.*, 64 Iowa, 762. Nor from the fact that a wheel came off defendant's stage coach allowing it to fall upon the plaintiff, who was on the foot pavement. *Doyle* v. *Wragg*, 1 Fost. & F. 7. Nor from the fall of a cinder from an elevated train, injuring one in

the street below.   *Searles* v. *Manhattan RR. Co.*, 101 N. Y. 661.

Where the injuries occur on the defendant's premises elsewhere than on the highway all the cases are of accidents wherein the cause was in such plain view as to constitute a patent defect, and the act of *omission* was of the most palpable sort.   Such as bags of sugar in course of hoisting falling on plaintiff.   *Scott* v. *London Dock Co.*, 3 Hurl. & Colt. 596.   Packing case leaning against wall falls on plaintiff.   *Briggs* v. *Oliver*, 35 L. J., N. S., Exch. 163.   Heavy box in course of hoisting fell on plaintiff.   *Lyons* v. *Rosenthal*, 11 Hun. 46.   Servant of ice dealer drops cake of ice in carrying it on plaintiff.   *Kaples* v. *Orth*, 61 Wis. 531.   That a steamboat on a calm day, in smooth water, strikes a properly built wharf with such force as to tear up some of the flooring and injure a person standing thereon is *prima facie* evidence of negligence on the part of the boat's crew.   *Inland, etc., Co.* v. *Tolson*, 139 U. S. 551.   But, see *contra*: *Kendall* v. *Boston*, 118 Mass. 234; *Weitner* v. *President, etc., Co.*, 4 Robt. 234; *The Nitro-Glycerine Case*, 15 Wall., at p. 538.

The third class of cases are all of injuries to passengers which depend upon the contract of the carrier, whether by explosions, collisions, falling objects or injuries in embarking and alighting.   The cases in Maryland uniformly hold that negligence or want of ordinary care must be proved and not inferred from the circumstances.   *Foy's Case*, 47 Md. 82; *Frick's Case*, 39 Md. 574; *Burns's Case*, 54 Md. 113; *Miller's Case*, 58 Md. 221; *Bahr's Case*, 28 Md. 647.   We submit that there is no authority for the application of the doctrine *res ipsa loquitur* to the happening of an accident like this where the cause was *latent, unusual* and *extraordinary*.

3. The court below erred in granting the third instruction asked for on behalf of the plaintiff; because the instruction assumes a contradiction.   The law does not apply one rule to the defendant and another to the plaintiff.   The question of *contributory negligence* becomes important only

or the finding of negligence on the part of the defendant. The negligence could only have been a lack of such *ordinary care* as would cause a condition of *probable* danger. If the company's servants ought to have known of or suspected the presence of gas in this pit, the plaintiff, a plumber, ought to have known of it or suspected it. He cannot screen himself from responsibility for exercising due care in avoiding danger suspected by him by relying upon the assurances of the company's servants and at the same time attack those *assurances* as *negligent.* *Railroad Co.* v. *Houston,* 95 U. S. 702; *Foy's Case,* 47 Md., 82.

*Mr. G. E. Hamilton* and *Mr. M. J. Colbert* for the defendant in error:

1. If there was any sufficient evidence tending to show negligence on the part of the defendant the court was right in submitting the question to the jury. There was ample evidence of negligence. In the first place, an extraordinary explosion did take place on the company's premises and thereby the plaintiff was injured. The fact alone raises a presumption of negligence which the defendant is called upon to explain away. An injury upon a railroad car while the plaintiff was in the exercise of ordinary care is *prima facie* evidence of the company's liability. *Railroad Co.* v. *Pollard,* 22 Wall. 341. The explosion of a boiler of a steamboat is *prima facie* evidence of negligence. *Posey* v. *Scoville,* 10 Fed. Rep. 140; *Dunlap* v. *Steamboat Reliance,* 2 Fed. Rep. 249. Negligence may be inferred from the fact of the explosion of a steam boiler on a vessel, even where the defendant is under no contract obligation to the plaintiff, from the fact that boilers do not usually explode when they are in a safe condition and are properly managed. *Rose* v. *Transportation Company,* 20 Blatch. 411. The owner of a building adjoining a street is under a legal obligation to take such care of the building that it does not fall into the street. When such an accident does happen, in the absence of explana-

tory circumstances, negligence will be presumed and the burden is upon the owner of showing ordinary care. *Mullen* v. *St. John*, 57 N. Y. 567. The same doctrine has been decided in numerous cases. *Scott* v. *London Dock Co.*, 3 Hurlstone & Coltman, 596 ; *Christie* v. *Griggs*, 2 Campbell, 79 ; *Cummings* v. *Furnace Co.*, 60 Wis. 603 ; *Kearney* v. *RR. Co.* L. R., 5. Q. B. 411 ; *Kirst* v. *RR. Co.*, 46 Wis. 489; *Edgerton* v. *RR. Co.*, 39 N. Y. 227 ; *Stokes* v. *Saltonstall*, 13 Pet. 181 ; *Transportation Co.* v. *Downer*, 11 Wall. 129.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

At the close of the evidence, the defendant moved the court for a direction to the jury to return a verdict for the defendant, because of the supposed insufficiency of the evidence to render the defendant liable to the plaintiff. This request was refused, and we think properly.

It is argued by the defendant, the present appellant, that there was no duty owing to the plaintiff by the defendant ; and in order to maintain an action for a negligent injury, it must appear that there was a *legal duty* owing from the person inflicting the injury to the person on whom it was inflicted, and that such duty has been violated by the want of ordinary care on the part of the defendant. This, as a general proposition, may be conceded. But it does not embrace or apply to this case.

Here the defendant was under a contract duty to the municipal government of the District, to maintain the water meter upon its premises in good condition, and in such position that it could be approached and examined with reasonable safety by the agents of the municipal government. The duty of the defendant was created by contract, and the right of the plaintiff to go upon the premises of the defendant, was derived from the municipal government ; and there was a duty of the defendant to the plaintiff, which was simply the result of the contract duty

of the defendant to the municipal government of the District. *Burrows* v. *March Gas Co.*, L. R. 5 Exch. 67, 71. It is true, there was no privity of contract as between the plaintiff and defendant, but there was a right created by the contract with the District government that afforded protection to the plaintiff against the negligence or want of reasonable care of the defendant.

The principle that applies to and controls this case is well and aptly illustrated by what is now regarded in the courts of England as a leading case, namely, the case of *Indermaur* v. *Dames*, L. R. 1 C. P. 274, affirmed on appeal in the Exchequer Chamber, L. R. 2 C. P. 311. In that case the plaintiff was a journeyman gasfitter, employed to examine and test some new burners which had been supplied by his employer for use in the defendant's sugar refinery. While on the upper floor of the building, he fell through an unfenced shaft which was used in working hours for raising and lowering sugar. At the trial it was found as a fact that there had been no want of reasonable care on the part of the plaintiff; and the court held, that, on the admitted facts of the case, the plaintiff was in the building as a person on lawful business, by virtue of a contract, and not upon bare permission. And with respect to the rights of such person, being upon the premises of the defendant in the performance of duty in the course of lawful business, the court said : "That he, (the plaintiff,) using reasonable care on his part for his own safety, is entitled to expect that the defendant shall on his part use reasonable care to prevent damage from unusual danger, which he knows or ought to know; and that, where there is evidence of neglect, the question whether such reasonable care has been taken, by notice, lighting, guarding or otherwise, and whether there was contributory negligence in the sufferer, must be determined by a jury as matter of fact."

This case does not fall within the principle of the case of *Larmore* v. *Crown Point Iron Co.*, 101 N. Y. 391, and other

4 Ct. App.—13

cases of that class, where the person injured was upon the premises of the defendant, where danger was not apparent, simply as a volunteer, not in the performance of duty. In that case the plaintiff was held not to be entitled to recover.

But in the case of *Parry* v. *Smith*, 4 C. P. Div. 325, the precise question here presented seems to have arisen and been decided. In that case the defendant, a gasfitter, was employed by the master of the plaintiff to repair a gas meter upon his premises, and for the purpose of doing the work took away the meter, and in lieu of it made a temporary connection, by means of a flexible tube between the inlet pipe and the pipe communicating with the house. The plaintiff, the servant of the owner of the house and the employer of the gasfitter, having gone in the ordinary performance of his duty with a light into the cellar where the meter had been, gas, which had escaped by reason of the insufficiency of the connecting tube, exploded and injured him. The case was reserved for full argument, and appears to have been fully argued upon the authorities. And the learned judge in his opinion, in referring to the respective contentions of the parties, says:

"Mr. Waddy contended, on the part of the defendant, that there was no cause of action unless there was privity between the plaintiff and the defendant, or unless what was done by the defendant amounted to a public nuisance, or unless there had been, on the part of the defendant, fraud, misrepresentation, or concealment. It was contended by Mr. Finlay, on the part of the plaintiff, that the action would lie, because the defendant knew he was dealing with gas, a thing highly dangerous in itself, unless great care and caution were used in its management; that the plaintiff's right of action was founded, not on contract, but on the *duty* which attaches to the use or dealing with a thing in its nature highly dangerous and likely to cause damage, unless managed with great care and caution.

"I think," says the judge, "the plaintiff's right of action

is founded on a duty which I believe attaches in every case where a person is using or is dealing with a highly dangerous thing, which, unless managed with great care, is calculated to cause injury to bystanders.   To support such a right of action, there need be no privity between the party injured and him by whose breach of duty the injury is caused, nor any fraud, misrepresentation or concealment; nor need what is done by the defendant amount to a public nuisance.   It is a misfeasance independent of contract."

That case goes farther than is required that we should go here to maintain the right of action against the defendant; but the ruling there fully embraces the proposition now under consideration.   We are of opinion, therefore, that the right of the plaintiff to sue the defendant for the injury received, if supported in fact and the negligence be shown, is clear beyond question.

The learned justice below, upon the whole evidence, gave a most clear and admirable charge to the jury, with which we entirely agree, with one single exception; and that is the instruction at the instance of the plaintiff, whereby the jury were directed, " That if they believed that the injuries to the plaintiff for which he seeks to recover, were caused by an explosion of gas in the pit where the water meter was located, which explosion was unusual and a thing which ought not to occur in the ordinary and proper management of the affairs of the defendant, then the fact of such explosion is *prima facie* evidence of negligence on the part of the defendant, and is sufficient to entitle the plaintiff to recover, unless the defendant overcome this presumption and satisfies the jury by a preponderance of evidence that such explosion was caused by no negligence or carelessness on its part."

This instruction imposed upon the defendant the burden of proving a negative; though the general principle is, in actions founded upon the alleged negligence of the defendant, that the burden of proof is upon the plaintiff.   As said by the Supreme Court of the United States, in the *Nitro-*

*Glycerine Case*, 15 Wall. 524, 537 : " The mere fact that injury has been caused is not sufficient to hold the defendants. No one is responsible for injuries resulting from unavoidable accident, whilst engaged in a lawful business. A party charging negligence as a ground of action must prove it. He must show that the defendant, by his act or by his omission, has violated some duty incumbent upon him, which has caused the injury complained of."

There are cases, it is true, where from their peculiar nature, and the high degree of care required of the defendant, the occurrence of the accident may furnish a fair inference that the accident would not or could not have occurred but for the precedent negligence on the part of the defendant. But this case is not of that character. The simple fact that gas was found accumulated in the pit, though unusual, and not according to the ordinary occurrence of events, did not give rise to a *prima facie* presumption that it was there by the negligence of the defendant. At most it was but a circumstance to be considered in connection with the other facts of the case tending to prove negligence. The defendant was only required to exercise such reasonable care with respect to the condition of the pit as persons of ordinary careful habits would have exercised under a similar condition of things ; and if the officers and agents of the company had no reasonable cause to believe that gas in dangerous quantities existed in the pit, negligence ought not to be imputed to them. The meter had been used, and inspected from time to time, in that situation, for a considerable time, and no cause for apprehension of danger by reason of accumulation of gas in the pit, had ever before been discovered to exist. The time of the happening of the accident was the first time that gas was actually shown to have accumulated in the pit around the meter; but how long that state of things had existed previous to the actual discovery, can only be matter of inference from the circumstances in proof. The leak from the gas pipe was only

discovered after the accident, and when the danger had become manifest. Whether the circumstances in proof were sufficient to satisfy the jury of the fact that the defendant, by its officers and agents, had such previous warning or admonition of the escape or accumulation of the gas as would have put persons of ordinary care and caution on inquiry and investigation to discover the leak or source of the escaping gas, was the principal question of fact to be determined.

The learned justice below put the question to the jury very fully and clearly, and we cannot do better than to quote his language. He charged the jury that the question was : " Ought they, the officers of the company, in the exercise of due care, to have known that there was gas there and where it was and where it came from ? It is agreed on all hands that the gas, if it was in this pit, escaped from one of two points—either the bell joint or the drip pipe—both of them a long distance away from this pit. The question is, ought these officers, in the exercise of due care, to have known that there was gas there and to have traced it down to its origin or source? If they ought, then the case is to be considered as if they did know that the gas was escaping from this point, and then the question still would be whether they then ought to have known that it was possible for that gas to escape along those pipes, so as to enter this pit and make it dangerous ; or, on the other hand, would they be justified in thinking that was an impossibility ? If you find that they were guilty of negligence in these respects the plaintiff would have a right to recover for the consequences of the injury. If you find that they acted as reasonable and prudent men, either in disbelieving the presence of gas there or in disbelieving the possibility of its escaping from this place and traveling along to the pit, then they were not guilty of negligence, and the company would not be responsible. It is, therefore,

altogether a question of due care on the part of these officers."

With the single exception of the proposition, as to the burden of proof, to which we have already adverted, the charge is quite unexceptionable, and fully covers the whole case, and placed the questions for determination before the jury in a manner as favorable to the defendant as it had any right to ask under the law of the case. In the rejection of the separate propositions offered by the defendant for instruction, we discover no error; nor in any of the rulings in respect to the admission of evidence. The only error we find is that in respect to the presumption of negligence, and for that we must reverse the judgment and remand the cause for a new trial.

*Judgment reversed, and cause remanded.*