21051

Woodrow Thomas WILSON, Respondent, v. DUKE POWER COMPANY and Milton M. Byars, Jr., Appellants.

(258 S. E. (2d) 101)

*Andrew B. Marion* and *Donald A. Harper,* of *Haynsworth, Perry, Bryant, Marion & Johnston,* Greenville, *for appellant Duke Power Co.*

*David L. Freeman* and *Carl F. Muller,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for appellant Byars.*

*Eugene C. Covington, Jr.* of *Foster, Covington & Patrick,* Greenville, *for respondent.*

September 6, 1979.

LITTLEJOHN, Justice:

The plaintiff, Woodrow Thomas Wilson, brought this action to recover for personal injuries suffered from burns when he came in contact with, or in close proximity to, an electrical wire and fell 17 feet from a building under construction onto a concrete floor. Defendants in the action are Milton M. Byars, Jr., owner of the building under construction, and Duke Power Company, which operated a transmission power line which passed over the edge of the building. The jury returned a verdict in the amount of $20,000 actual damages against both defendants jointly and,

in addition, $5,000 punitive damages against each. Both defendants have appealed.

The facts giving rise to the cause of action are as follows:

Byars owned approximately 20 acres of land some three or four miles from Greenwood. In preparation to the building of a warehouse-type structure, he poured a concrete floor base 100 feet square. The concrete base encroached upon the right-of-way of Duke Power Company, such that the building when completed would be under Duke's high voltage (44,000 volts) transmission lines, which were suspended from wooden poles at a height of about 22 feet. In December, 1975, the concrete pad came to the attention of Duke's employees, who approached Byars and told him that because of the voltage a building could not be safely built under the line as it was then located. James M. Creech, Duke's superintendent of transmission line maintenance, testified as follows concerning his discussion with Byars:

"Q. Do you recall whether or not any conversation regarding legal action came up at that particular meeting?

"A. Yes, sir. In the course of the conversation several proposals were made by Mr. Byars as to how he could use this concrete pad. He was concerned about the cost of it.

"Q. All right, sir.

"A. How much money was involved. And at one point durnig our conversation Mr. Byars made the statement to me: 'What would you do if I went ahead and built the building?'

"Q. And what if anything did you tell him?

"A. My answer to him was that I would get an injunction and stop him.

"Q. Did he say anything in response?

"A. No, sir. It was kind of a snicker and we went on to other subjects about how you might use the thing, it was passed on over.

"Q. All right. Did you have an understanding from your meeting with Mr. Byars whether or not he was going to build the building under the wires as you see it right here?

"A. My understanding of our meeting was that nothing else would be done, that the portion of the building next to the line would not be completed in any case. That was the portion we were most concerned about."

Thereafter, Byars completed one-half of the building, most distant from the power lines. Duke was aware of this and took no further action. In April, 1976, it became necessary to complete the entire building in order that Byars could collect the proceeds of a loan. Byars decided that the remainder of the building would be completed, and Huskey Construction Company contracted to do the work. On Wednesday, April 14, 1976, Huskey proceeded to complete the structural framework. On Monday, April 19, 1976, the steelwork for the structure had been completed. Huskey brought a crew, including plaintiff Wilson, from Greenville to install the roof. Wilson had been with Huskey for about a month and had worked on two other buildings. He was a 20-year-old helper, who had completed the 11th grade. While Wilson was on the building, he either came in contact with a high voltage wire, or came within such close proximity that the current arced to his body, causing him to suffer burns and fall from the building.

Both Duke and Byars submit to this court that a verdict should have been directed in their favor. In addition, Byars submits that he is insulated from liability under the Workmen's Compensation Law, § 42-1-400, *Code of Laws of South Carolina* (1976), as Wilson's statutory employer. Errors are also alleged in the handling of evidentiary matters.

We treat first the contentions of Byars that the evidence does not warrant the inference that he was guilty of negligence, or recklessness, proximately causing injuries to the plaintiff Wilson.

There was ample evidence to support the jury's finding that Byars was negligent and reckless. It is not disputed that Wilson was, as a business invitee, entitled to at least a warning of any unsafe conditions of which the landowner knew or should have known, and of which the invitee was, reasonably, not aware. *Bolen v. Strange,* 192 S. C. 284, 6 S. E. (2d) 466 (1939); *See Honea v. West Va. Pulp & Paper Co.,* 380 F. (2d) 704 (4th Cir. 1967) (applying S. C. law); *see Hughes v. Children's Clinic, P. A.,* 269 S. C. 389, 237 S. E. (2d) 753 (1977). There is evidence that Byars knew the wire was so dangerous that he should not permit workers under it. There is evidence that Byars revealed the danger neither when he told Huskey to build the building, nor when asked by a worker why only half of the building had been put up at first.

Recklessness may be inferred from conduct so grossly negligent that a person of ordinary reason and prudence would then have been conscious of the probability of injury. *Yaun v. Baldridge,* 243 S. C. 414, 419, 134 S. E. (2d) 248 (1964). There is evidence that Byars knew of the danger the wire posed. The jury could have reasonably concluded that, by ordering completion of the building, he consciously subjected the workmen to extreme danger.

The testimony of Frank T. Grant, Huskey's foreman, reflects the conscious disregard which Byars held for the rights of others:

"Q. Could you just tell this jury why you were in a hurry, if you know.

"A. Well, we wanted to git the roof on it before Duke Power knew we were back down there."

The evidence amply supports the verdict against Byars as to both actual and punitive damages.

The award as relates to Duke Power Company must be vacated. Assuming, without so deciding, that Duke was guilty of negligence and/or recklessness,

we think, as a matter of law, that nothing Duke did or failed to do proximately caused the injuries sustained. The efficient, immediate and real cause of the injury was the improper conduct of Byars in proceeding to encroach upon Duke's right-of-way and complete a building underneath its high voltage transmission lines, consciously subjecting workmen to danger.

The contention that Wilson should be barred from recovery by reason of contributory negligence is without merit. The jury having found that Byars was reckless, contributory negligence is not a defense. *Lawless v. Frayer,* 244 S. C. 501, 137 S. E. (2d) 591 (1964). The issue was, at most, one for the jury, which made the determination adversely to Byars. We cannot say, as a matter of law, that Wilson should be barred from recovery by reason of contributory negligence, contributory recklessness, or assumption of risk.

Byars additionally contends that he should not have to respond for the injuries because he was a statutory employer and is entitled to immunity under the Workmen's Compensation Law, *Code* § 42-1-400. The crucial test governing application of this defense is whether the plaintiff was performing work which was a part of the "trade, business, or occupation" of the defendant. *Adams v. Davison-Paxon,* 230 S. C. 532, 96 S. E. (2d) 566 (1957); *Boseman v. Pacific Mills,* 193 S. C. 479, 8 S. E. (2d) 878 (1940); *Marchbanks v. Duke Power Co.,* 190 S. C. 336, 2 S. E. (2d) 825 (1939).

The plaintiff was an employee of Huskey Construction Company, which contracted to construct the building on defendant Byars' property. Byers was formerly in the stock brokerage business, but at the time of the accident had abandoned that profession to devote his energies to the development of properties he owned. The crucial issue is whether the construction work being performed by Huskey was a

part of his trade, business, or occupation. The lower Court properly found that the construction work being performed was not a part of Byars' trade, business, or occupation.

All other questions submitted to the court have been examined and found to be without merit, and found to have no precedential value. No error of law appears and all are dismissed under our Rule 23.

Reversed in part;

Affirmed in part;

Remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.