541 S.E.2d 857

**Angela SIMS and Anthony Sims, Appellants,**

v.

**Derrick GILES, Respondent.**

**No. 3291.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2001.
Decided Jan. 29, 2001.

Percy Beauford, of Moncks Corner, for Appellants.

James A. Atkins, of Clawson & Staubes, of Charleston, for Respondent.

ANDERSON, Judge:

This is a premises liability case. An electric company meter reader was injured while on the property of a customer. The trial court directed a verdict in favor of the customer concluding the meter reader was a licensee on the property as opposed to an invitee. The meter reader appeals. We reverse and remand.

## FACTS/PROCEDURAL BACKGROUND

At the time of her accident, Angela Sims was employed by the South Carolina Electric & Gas Company ("SCE & G") as a meter reader. On April 18, 1995, because of a backlog, Sims was reading meters on a route she had ridden on as a passenger but was otherwise unfamiliar with the route. One

of the houses on this route was owned by Derrick Giles. His meter was located on the back of his residence and only accessible through a wrought iron gate leading into his backyard. When Sims attempted to open the gate, it somehow came off its hinges and crashed on top of her.

In approximately July of 1994, Giles began wedging a stick, which he painted the same color orange as the fence, behind his cast iron gate to hold it shut. Due to settling, the gate no longer functioned the same as when it was originally installed. The stick propped behind the gate stopped it from opening and blowing in the wind.

To open the gate, a person must reach through the bars and knock the stick over. Without the stick in place, the gate swings freely with no problem and with little effort. It swings inward on pin-type hinges and typically lifts up slightly as it opens. Randall Langston, one of the regular meter readers on this route, testified he had no trouble with the gate after he started using the proper technique for opening it. However, if too much force is applied to the gate, as happened on at least one occasion with Langston, then it would fall off its hinges.

After discovering the gate off its hinges at some point prior to Sims' accident, Giles called SCE & G and gave instructions on how to open the gate. He explained the technique of reaching through the gate and knocking the stick aside. Information to this effect was entered on a hand-held computer carried by SCE & G meter readers called a "data cap." The data cap contains all necessary information while in the field, including addresses, meter locations at those addresses, and other special instructions, which range from telephone numbers of customers to reports of bad dogs or locked gates. While on the route each month, the data cap beeps until the meter reader reads and acknowledges any special instructions or warnings at a particular address by pressing a button.

Sims declared the data cap advised to "kick on board, gate will fall open." She professed she only saw a two-by-four under the bottom of the gate. She did not see the stick holding the gate shut. Sims propped the data cap between her legs and kicked the two-by-four. After her second kick, the board shifted. Sims caught her boot under the gate. She fell to the ground and the gate crashed on top of her.

Sims and her husband filed actions for negligence, loss of consortium, and negligent infliction of emotional distress. At the conclusion of the Sims' case, Giles moved for a directed verdict on the issue of liability. After hearing arguments on the motion, the trial judge found Sims, acting in her capacity as a meter reader, was a licensee. Based on this classification, the trial judge ruled that, as a matter of law, there was no evidence of negligence on the part of Giles. The trial judge directed a verdict in favor of Giles on all causes of action. The Simses appeal the directed verdict on their causes of action.

## STANDARD OF REVIEW

In ruling on a motion for directed verdict, the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Futch v. McAllister Towing,* 335 S.C. 598, 518 S.E.2d 591 (1999); *Collins v. Bisson Moving & Storage, Inc.,* 332 S.C. 290, 504 S.E.2d 347 (Ct.App.1998). *See also Weir v. Citicorp Nat'l Servs., Inc.,* 312 S.C. 511, 435 S.E.2d 864 (1993)(illustrating an appellate court must apply the same standard when reviewing the trial judge's decision on such motions). When the evidence yields only one inference, a directed verdict in favor of the moving party is proper. *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 514 S.E.2d 126 (1999); *Arthurs v. Aiken County,* 338 S.C. 253, 525 S.E.2d 542 (Ct.App.1999). If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. *Mullinax v. J.M. Brown Amusement Co.,* 333 S.C. 89, 508 S.E.2d 848 (1998); *Getsinger v. Midlands Orthopaedic Profit Sharing Plan,* 327 S.C. 424, 489 S.E.2d 223 (Ct.App.1997). *See also Horry County v. Laychur,* 315 S.C. 364, 434 S.E.2d 259 (1993)(directed verdict should not be granted unless only one reasonable inference can be drawn from the evidence).

In deciding whether to grant or deny a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence. *Long v. Norris & Assocs., Ltd.,* 342 S.C. 561, 538 S.E.2d 5 (Ct.App.2000); *Jones v. General Elec. Co.,* 331 S.C. 351, 503 S.E.2d 173 (Ct.App. 1998). The trial court can only be reversed by this Court when there is no evidence to support the ruling below. *Swin-*

*ton Creek Nursery*, 334 S.C. at 477, 514 S.E.2d at 130; *Arthurs*, 338 S.C. at 261, 525 S.E.2d at 546. When reviewing the grant of a directed verdict, the appellate court should not ignore facts unfavorable to the opposing party. *Collins*, 332 S.C. at 296, 504 S.E.2d at 350. Rather, it must determine whether a verdict for the opposing party would be reasonably possible under the facts as liberally construed in the opposing party's favor. *Jones*, 331 S.C. at 356, 503 S.E.2d at 176. *See also First State Sav. & Loan v. Phelps*, 299 S.C. 441, 385 S.E.2d 821 (1989)(in reviewing granting of directed verdict, court should determine elements of action alleged and whether any evidence existed on each element).

## ISSUE

Was Sims, in her capacity as a meter reader for SCE & G, a licensee or an invitee while on premises owned by Giles, a customer of SCE & G?

## LAW/ANALYSIS

■ Sims argues she, while properly on Giles' property in her capacity as a meter reader for SCE & G, was an invitee. She contends the trial court committed reversible error in classifying her status as a licensee. We agree.

### A. Premises Liability

■ South Carolina recognizes four general classifications of persons who come on premises: adult trespassers, invitees, licensees, and children. Different standards of care apply depending on whether the visitor is considered an "invitee," i.e., an invited (express or implied) business guest; a "licensee," i.e., a person not invited, but whose presence is suffered; a "trespasser," i.e., a person whose presence is neither invited nor suffered; or a child. *See* Joseph F. Singleton, *Liability of Owner or Possessor of Land*, 21 S.C. L.Rev. 291 (1969). *See also Larimore v. Carolina Power & Light*, 340 S.C. 438, 444, 531 S.E.2d 535, 538 (Ct.App.2000)("The level of care owed is dependent upon the class of the person present.").

■ In premises liability cases, the invitee is offered the utmost duty of care by the landowner and a trespasser is generally offered the least. Since meter readers enter prem-

ises with some form of acquiescence or permission arising through the landowner's contract with SCE & G, they are not trespassers. *See Smiley v. Southern R.R.*, 184 S.C. 130, 191 S.E. 895 (1937)(if owner or possessor consents or acquiesces in constant trespasses, an implicit invitation requiring such care as is individually owed to a licensee may be found); *Snow v. City of Columbia*, 305 S.C. 544, 552, 409 S.E.2d 797, 802 (Ct.App.1991)("The unwarrantable entry on land in the peaceable possession of another is a trespass.... The entry itself is the wrong. Thus, for example, if one without license from the person in possession of land walks upon it, ... he commits a trespass by the very act of breaking the enclosure.") (citation omitted). In fact, the contention that a meter reader is not specifically invited onto the premises and is thus a trespasser has been rejected. *See* 62 Am.Jur.2d *Premises Liability* § 453 (1990). Sims is not a child; therefore, the only issue presented, which is novel in South Carolina, is whether Sims, in her capacity as a SCE & G meter reader, should be considered an invitee or a licensee.

### B. Invitees

"An invitee is a person who enters onto the property of another at the express or implied invitation of the property owner." *Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 441, 494 S.E.2d 827, 831 (Ct.App.1997). "Invitees are limited to those persons who enter or remain on land upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make them safe for their reception." Restatement (Second) of Torts § 332 cmt. a (1965). The visitor is considered an invitee especially when he is upon a matter of mutual interest or advantage to the property owner. *Parker v. Stevenson Oil Co.*, 245 S.C. 275, 140 S.E.2d 177 (1965); *Landry v. Hilton Head Plantation Prop. Owners Ass'n, Inc.*, 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994).

"Phrased somewhat differently, it may be said that a person is an invitee on the land of another if he enters by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or

a benefit to the owner." 62 Am.Jur.2d *Premises Liability* § 87 (1990). *See also Larimore,* 340 S.C. at 444, 531 S.E.2d at 538 ("Because Larimore, [who was hired by the property owner to add vinyl siding to his home,] was a business visitor invited to enter or remain on the property for a purpose directly or indirectly connected with [the property owner], Larimore was an invitee.").

"Invitees include patrons of stores, patients in a physician's office, persons visiting a filling station to use the restroom or vending machine or to ask directions, and workmen invited to work on the premises." F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* 112–13 (2d ed.1997)(footnotes omitted).

■■ The law recognizes two types of invitees: the public invitee and the business visitor. "A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open to the public." *Goode,* 329 S.C. at 441, 494 S.E.2d at 831; Restatement (Second) of Torts § 332(2) (1965). *See also Creech v. South Carolina Wildlife and Marine Res. Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997)(discussing the duty owed a public invitee who was injured when she fell off a public dock; landowner may be liable for an injury arising from an "open and obvious" danger if the landowner should have anticipated the harm that occurred).

■■ A business visitor, on the other hand, is an invitee whose purpose for being on the property is directly or indirectly connected with business dealings with the owner. *Goode,* 329 S.C. at 441, 494 S.E.2d at 831. *See also Parker,* 245 S.C. at 280, 140 S.E.2d at 179 (the term "invitee" in premises liability cases usually means the same thing as a business visitor and refers to one who enters upon the premises of another at the express or implied invitation of the occupant, especially when he is there about a matter of mutual interest or advantage); *Hoover v. Broome,* 324 S.C. 531, 535, 479 S.E.2d 62, 65 (Ct.App.1996)("Business visitors are considered invitees as long as their purpose for entering the property is either directly or indirectly connected with the purpose for which the property owner uses the land."); Restatement (Second) of Torts § 332(3) (1965)("A business visitor is a

person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."). However, "[t]he class of persons qualifying as business visitors is not limited to those coming upon the land for a purpose directly or indirectly connected with the business conducted thereon by the possessor, *but includes as well those coming upon the land for a purpose connected with their own business,* which itself is directly or indirectly connected with a purpose for which the possessor uses the land." 62 Am.Jur.2d *Premises Liability* § 88 (1990)(emphasis added).

The business visitor is generally divided into two classes. The first class of business visitor "includes persons who are invited to come upon the land for a purpose connected with the business for which the land is held open to the public, as where a person enters a shop to make a purchase, or to look at goods on display." Restatement (Second) of Torts § 332 cmt. e (1965). "The second class includes those who come upon land not open to the public, for a purpose connected with business which the possessor conducts upon the land, or for a purpose connected with their own business which is connected with any purpose, business or otherwise, for which the possessor uses the land." *Id.* "Thus a truck driver from a provision store who enters to deliver goods to a private residence is a business visitor; and so is a workman who comes to make alterations or repairs on land used for residence purposes." *Id.*

The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty. *Larimore v. Carolina Power & Light,* 340 S.C. 438, 531 S.E.2d 535 (Ct.App.2000). The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge. *Callander v. Charleston Doughnut Corp.,* 305 S.C. 123, 406 S.E.2d 361 (1991). The degree of care required is commensurate with the particular circumstances involved, including the age and capacity of the invitee. *Henderson v. St. Francis Cmty. Hosp.,* 303 S.C. 177, 399 S.E.2d 767 (1990).

In addressing this issue, our Supreme Court specifically adopted the Restatement (Second) of Torts § 343A (1965) in *Callander v. Charleston Doughnut Corp.*, 305 S.C. at 126, 406 S.E.2d at 362.[1]  Section 343A provides:

### § 343A.  Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

This duty is an active or affirmative duty.  *Hughes v. Children's Clinic, P.A.*, 269 S.C. 389, 237 S.E.2d 753 (1977); *Garvin v. Bi–Lo, Inc.*, 337 S.C. 436, 523 S.E.2d 481 (Ct.App. 1999), *cert. granted,* March 21, 2000.  It includes refraining from any act which may make the invitee's use of the premises dangerous or result in injury to him.  *Hughes,* 269 S.C. at 397, 237 S.E.2d at 756; *Garvin,* 337 S.C. at 444, 523 S.E.2d at 485.  It is not necessary that the precise manner in which the injuries were sustained be foreseeable.  *Hughes,* 269 S.C. at 397, 237 S.E.2d at 757; *Orr v. First Nat'l Stores, Inc.*, 280 A.2d 785 (Me.1971).  Rather, "[i]t is sufficient that there is a reasonable generalized gamut of greater than ordinary dangers of injury and that the sustaining of the injury was within this range....  It was, therefore, a jury question whether the defendant had provided reasonably safe premises ... for the use of the ... invitee."  *Hughes,* 269 S.C. at 397–98, 237 S.E.2d at 757 (quoting *Orr,* 280 A.2d at 794).

---

**1.** *Callander* was distinguished by *Larimore,* 340 S.C. at 445, 531 S.E.2d at 539, based on a landowner's knowledge of a potentially dangerous defect on his property.  Unlike the property owner in *Larimore,* the shop owner in *Callander* had actual notice of a defective stool and the fact that his elderly customers frequently backed into the stools to sit down.  Thus, a jury question arose in *Callander* whether the doughnut shop owner should have anticipated the harm resulting from an elderly customer backing to sit down on a broken stool, which, in fact, happened.

## C. Licensees

A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent. *Neil v. Byrum*, 288 S.C. 472, 343 S.E.2d 615 (1986); Restatement (Second) of Torts § 330 (1965). *Cf. Bryant v. City of North Charleston*, 304 S.C. 123, 403 S.E.2d 159 (Ct.App.1991)(since *Neil* defines standard of care owed *licensee*, not public invitee, there was no error by trial judge *not* to charge *Neil* to jury where 80–year old woman tripped and fell over barricade placed over depression on public sidewalk). When a licensee enters onto the property of another, the primary benefit is to the licensee, not the property owner. *Hoover v. Broome*, 324 S.C. 531, 479 S.E.2d 62 (Ct.App.1996); *Landry v. Hilton Head Plantation Prop. Owner's Ass'n, Inc.*, 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994). A licensee is a person whose presence is tolerated, a person not necessarily invited on the premises, but one who is privileged to enter or remain on the premises only by the property owner's express or implied consent. *Frankel v. Kurtz*, 239 F.Supp. 713 (W.D.S.C.1965).

The most common example of a licensee is the social guest. *See* F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* 111 (2d ed.1997). *See also Frankel*, 239 F.Supp. at 717 ("A social guest is a licensee"; as such, he enters the premises by virtue of the possessor's consent). "An injured person has been held to be a licensee where he entered premises to seek a favor, to make inquiries or ask directions, to do volunteer work, to use recreational facilities without asking specific permission, to recover an item of personal property left on the premises, to obtain some article of value given to the licensee by the occupant, or while chasing his dog." 62 Am.Jur.2d *Premises Liability* § 111 (1990)(footnotes omitted). In *Neil v. Byrum*, our Supreme Court explained:

> The possessor is under no obligation to exercise care to make the premises safe for his reception, and is under no duty toward him except:
>
>   (a) To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land.
>
>   (b) To use reasonable care to warn him of any *concealed dangerous conditions* or activities which are known

to the possessor, or of any change in the condition of the premises which may be dangerous to him, and which he may reasonably be expected to discover.

*Neil,* 288 S.C. at 473, 343 S.E.2d at 616 (emphasis in original)(quoting *Frankel,* 239 F.Supp. at 717).

Therefore, "[s]ince a licensee is there for his own benefit, he *can be said to accept* the premises as they are and demand no greater safety than his host provides himself." Hubbard & Felix, *supra,* at 111 (emphasis in original).

### D. Status of a Meter Reader

Although the duty of care a business owes its customers or other persons has been established, South Carolina has not addressed the specific issue of whether a meter reader or other public works employee is a licensee or an invitee. The basic distinction between a licensee and an invitee is that an invitee confers a benefit on the landowner. *Crocker v. Barr,* 305 S.C. 406, 409 S.E.2d 368 (1991); *Landry v. Hilton Head Plantation Prop. Owners Ass'n, Inc.,* 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994). *See also* Hubbard & Felix, *supra,* at 110–11 (the licensee "is there for his own purpose rather than to benefit the owner/occupier."). Further, while on premises conferring some benefit to the landowner, the invitee is entitled to a higher duty of care. Unlike a licensee, an invitee enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there. *Landry,* 317 S.C. at 203, 452 S.E.2d at 621; *Bryant v. City of North Charleston,* 304 S.C. 123, 403 S.E.2d 159 (Ct.App.1991); Restatement (Second) of Torts § 341A cmt. a (1965).

When a SCE & G meter reader enters a customer's property, the meter reader does so in furtherance of the contract to supply power between the landowner and SCE & G. The landowner benefits by his consumption of the power and SCE & G, in turn, benefits by knowing the rate of the landowner's use of power.

In essence, SCE & G is a private utility company engaged in the business of supplying power to landowners. In furtherance of that business, SCE & G enters into a contract with the landowner to supply power to the particular location. Under

the totality of the relationship, the meter reader is a business invitee. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61, at 429 (5th ed. 1984)("Where it can be found that the public employee comes for a purpose which has some connection with business transacted on the premises by the occupier, he is almost invariably treated as an invitee.... It is no doubt possible to spell out pecuniary benefit to the occupier in the case of ... a city water meter reader."). Stated another way, "[a] public utility employee who comes upon premises for the purpose of reading a meter or checking, installing, or maintaining the utility equipment is generally accorded the status of an invitee, and accordingly the person in occupation or control of the premises owes him a duty of exercising reasonable care to keep the premises reasonably safe for the contemplated use." 62 Am.Jur.2d *Premises Liability* § 452 (1990).

"The contention that a meter reader is not specifically invited onto the premises and is therefore only a licensee has been rejected." *Id.* § 453. Even in South Carolina, "[p]ublic employees like water meter readers are generally regarded as invitees." F.P. Hubbard & R.L. Felix, *The South Carolina Law of Torts* 113 (2d ed.1997).

We recently discussed the issue of the duty of care owed a worker performing his duties on the landowner's property in *Larimore v. Carolina Power & Light*, 340 S.C. 438, 531 S.E.2d 535 (Ct.App.2000). As Larimore was walking around a house inspecting the exterior vinyl siding he installed, he was injured when he stepped on a narrow trench that had been improperly compacted by CP & L employees. This Court found that "[b]ecause Larimore, [the vinyl siding subcontractor/installer], was a business visitor invited to enter or remain on the property for a purpose directly or indirectly connected with [the landowner], Larimore was an invitee." *Id.* at 444, 531 S.E.2d at 538. However, despite determining Larimore was a business invitee, we decided the case in favor of the landowner on other grounds. The Court noted a landowner is not an insurer of safety. Because Larimore failed to appeal the trial court's ruling the danger was open and obvious, that ruling was the law of the case.

Likewise, in *Wilson v. Duke Power Co.*, 273 S.C. 610, 258 S.E.2d 101 (1979), our Supreme Court classified a construction worker as an invitee. Wilson was injured while installing a roof on a building that was built too close to overhead power lines. He was electrocuted and fell from the roof. In concluding there was ample evidence to support the jury's finding the landowner was negligent and reckless, the Court observed it was "not disputed that Wilson was, as a *business invitee,* entitled to at least a warning of any unsafe conditions of which the landowner knew or should have known, and of which the invitee was, reasonably, not aware." *Id.* at 615, 258 S.E.2d at 104 (emphasis added).

### E.  Law From Other Jurisdictions

Other jurisdictions have found that "[i]n actions for personal injury to meter readers or similar public service employees coming upon premises in connection with the utilities supplied thereto, the courts have usually treated the employee as an invitee of the person responsible for the maintenance of the premises and accordingly have imposed the ordinary duty of a landowner to an invitee, that is, the exercise of reasonable care to keep the premises reasonably safe for the contemplated use, or at least to warn of dangers not open and obvious." J.D. Perovich, Annotation, *Liability of Owner or Operator of Premises for Injury to Meter Reader or Similar Employee of Public Service Corporation Coming to Premises in Course of Duties,* 28 A.L.R.3d 1344, 1346 (1969)(footnotes omitted). For example, in Indiana, "[m]eter readers are considered invitees." *Ross v. Lowe,* 619 N.E.2d 911, 914 (Ind.1993)(utility meter reader brought action against landowner for injuries sustained when he was attacked by family dog, which was locked in landowner's house by his 12–year old daughter with only screen door, which the dog crashed through and knocked down meter reader; jury question whether negligence of daughter is imputed to parents).

Generally, utility workers and other repairmen on premises are classified as invitees because of their relationship with the landowner. These invitees have permission to be on premises because of a contractual relationship between the parties. In addition to meter readers and repairmen on premises, other workers performing services under a contractual relationship

are considered invitees. "It has generally been held, either expressly or impliedly, that a garbage or trash man, while performing services for the owner, is an invitee, to whom the duty of exercising reasonable and ordinary care is owed by the owner or occupant in the operation and maintenance of its place of business or premises to avoid injuring him, but where he exceeds the scope of his invitation or performs an act which is not covered by his invitation, recovery has been denied by the court." Robert L. Simpson, Annotation, *Premises Liability: Liability of Owner or Occupant to Garbage or Trash Man Coming on Premises in Course of Duty*, 36 A.L.R.3d 610, 612–13 (1971)(footnotes omitted).

Georgia has classified meter readers as invitees when they are on premises in the capacity of their job as a meter reader. In *Sheffield Co. v. Phillips*, 69 Ga.App. 41, 24 S.E.2d 834 (1943), H.H. Phillips, an employee of the Georgia Power Company, was reading an electric meter at a store building owned by the Sheffield Company because the regular meter reader was on vacation. The meter was located near the rear door to the building on the inside rear wall of the first floor. This door was used by the public as a back entrance and as a throughway for bringing merchandise into the building and into the basement. Inside this entrance, the company maintained a freight elevator; however, no signs were at this entrance indicating the existence of the elevator. Because merchandise was stacked in his way, Phillips had to stand within a few steps on the inside of the doorway while reading the meter. Phillips was not aware this was the first floor resting place of the elevator. As he was reading the meter, the elevator lowered to the first floor without warning, struck Phillips, and injured him.

The Court of Appeals of Georgia ruled Phillips was an invitee and decided "[t]here is no merit in the contention that [Phillips] was a mere licensee on the premises." *Id.* at 838. The court based its conclusion, in part, on contractual grounds.[2] Georgia Power Company supplied power to Shef-

---

2. The *Sheffield* court additionally relied on Ga.Code Ann. § 105–401 (1933), now Ga.Code Ann. § 51–3–1 (2000), which reads:

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful

field and needed meter readers to determine proper billing. The power supply contract created an "implied invitation" to enter the land. *Id.* The *Sheffield* court emphasized:

> The plaintiff was an invitee on the premises of the defendant at the time he was injured. His employer, the power company, furnished the electric current to the defendant under a contract. The plaintiff was on the premises of the defendant at the time he was injured in order to read the meter on the premises. The reading of the meter was in furtherance of the contract between the defendant and the power company for the latter to furnish current to the defendant, and it was to the interest of the defendant, as well as to that of the power company, that the meter be read so as to determine the amount of current used by the defendant.

*Sheffield Co.*, 24 S.E.2d at 838.

Georgia was not the first jurisdiction that classified public works employees as invitees. Prior decisions from other jurisdictions reflect, in part, that an express or implied invitation arises from the contractual relationship between the parties. *See, e.g., Finnegan v. Fall River Gas–Works Co.*, 159 Mass. 311, 34 N.E. 523 (1893).

In *Washington Gas Light Co. v. Eckloff,* 4 App. D.C. 174 (D.C.Cir.1894), a municipal water meter inspector was injured when gas from one of The Washington Gas Light Company's pipes leaked and gas accumulated in the pit where the water meter was located. Eckloff smelled gas but was told by the gas company superintendent that the smell was not real gas but only "dead gas." Nevertheless, when Eckloff lit a candle to read the meter, he caused an explosion of the collected gas. The Court of Appeals for the District of Columbia found no error in the instruction to the jury concerning the requisite standard of care owed an invitee. The judge charged the jury as follows:

> purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.
> Ga.Code Ann. § 51–3–1 (2000).

The first question which you should be informed about is what degree of care it was incumbent upon this defendant to observe in keeping their premises safe.

I may say generally that it is bound to observe precisely the same degree of care that devolves upon each one of you with respect to your private dwelling; no more and no less.....

*Washington Gas Light Co.,* 4 App. D.C. at 182.

The Supreme Court of Errors of Connecticut, in *Bradley v. Sobolewsky,* 91 Conn. 492, 99 A. 1067 (1917), dealt with the theory of "express license." Edwin Bradley, an employee of the New Haven Gaslight Company, was sent by his employer to Vincent Sobolewsky's home to check a gas range which was supposedly out of order. Unfortunately, Bradley was sent to the wrong house and, as he approached the back door via a path leading from the front gate, he was attacked by Sobolewsky's dog. The trial judge ruled in favor of Sobolewsky finding Bradley was committing a trespass when he was bitten by the dog.

The appellate court reversed and ordered a new trial concluding Bradley was not a trespasser but was on the premises by virtue of an "express license." *Id.* at 1068. Sobolewsky had signed a service contract with the gas company which allowed its employees access for the purpose of examining its gas piping and apparatus. The court determined:

> We think it is clear that the plaintiff was at the time of the injury acting as the agent of the gas company authorized to examine gas apparatus on the defendant's premises. It is true that the authority afterwards appeared to have been given to him as the result of a mistake; but the mistake was made by the company in directing the plaintiff to the wrong place, and not by the plaintiff in going to a place to which he was not authorized to go. In going to the defendant's premises, he went precisely where the gas company told him to go and for a purpose for which the defendant had agreed that the authorized agent of the company might come.

*Bradley,* 99 A. at 1068. Even though Bradley was incorrect in entering Sobolewsky's yard for the express purpose of repair-

ing a gas range, he otherwise had the implied invitation to come on the premises anyway.

.   The duty of care owed invitees can flow from any person or entity that has control over the property.   In *Kennedy v. Heisen*, 182 Ill.App. 200, 1913 WL 2688 (1913), Thomas Kennedy, a water inspector, was killed when he entered the engine room of Charles Heisen's building and stepped on a large belt which carried him beneath the floor and into the fly wheel.   Heisen had leased the premises to Anderson & Co. for ten years and, as part of the lease, required Anderson & Co. to install their own water meter.   As required by Chicago regulations, a city water inspector had to examine the property and install a meter.   Heisen knew an inspector would be sent to inspect the premises before the City Commissioner of Public Works would grant a permit to tap the water main and install a meter.   The Appellate Court of Illinois amplified:

> The question whether the circumstances make a case of invitation in the technical sense of that word as used in many adjudged cases, or only a case of mere license is not free from difficulty.   The difficulty is not in ascertaining what is the law, but in applying it to the facts of the case. When a person is a mere licensee he has no cause of action on account of an injury received through the negligence of the licensor in the place he is permitted to enter.   In *Campbell on Negligence*, quoted by Mr. Justice Harlan in *Bennett v. Louisville & N.R. Co.*, 102 U.S. [577], 585, 26 L.Ed. 235 [ (1880) ], it is said: "The principle appears to be that invitation is to be inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or comfort of the person using it."   Here there was a common interest in the work between Heisen and the deceased and it was to their mutual advantage that the inspection be made-to Heisen's because such inspection was required in part performance of the covenants of his lease;  to the advantage of the deceased because the making of such inspection was in the performance of the duties of his employment.   It is immaterial that the request to the superintendent of the water bureau to have the premises inspected was made not by Heisen but by Anderson.   Heisen knew that an inspector would be sent to inspect the premises before a permit to install a new

connection with the water main would be granted. The employer of the deceased was bound to make the inspection and properly sent the deceased to perform that duty, and this prevents the case from being that of one who is a mere licensee. *Holmes v. N.E.R.R. Co.*, L.R. 4 Exch. 254.

The deceased did not enter defendant's building under license or authority given by the law.... We think that there was, in the sense in which the word is used in many of the adjudged cases, an invitation of the deceased by the defendant to go into his building to inspect the water pipes and connections, and that deceased went into said premises by the implied invitation of the defendant and not as a mere licensee.

*Kennedy*, 182 Ill.App. at 202–03.

The party in control of the premises, however, is not an insurer of the worker's safety. In *Barry v. Stop & Shop, Inc.*, 335 Mass. 767, 140 N.E.2d 198 (1957), David Barry, a water department employee, was, at the request of Stop and Shop, investigating flooding in the cellar of the store when an overhead trap door fell and hit Barry on the head. Generally, a landowner must warn a water department employee of known dangers of this sort. Yet, the *Barry* court found there was no liability on the part of Stop & Shop because "[e]very-thing connected with the situation was open and obvious. A warning by the defendant would not give the plaintiff more than he could learn at a glance." *Id.* at 199.

Other similarly situated workers on premises have been afforded the status of an invitee. The Supreme Court of Appeals of West Virginia, in *Cowan v. One Hour Valet, Inc.*, 151 W.Va. 941, 157 S.E.2d 843 (1967), followed Georgia's holding in *Sheffield Co. v. Phillips*, 69 Ga.App. 41, 24 S.E.2d 834 (1943).[3] Leslie Cowan, an inspector and tester of electric

---

**3.** West Virginia, however, has recently abandoned the common law distinctions between licensees and invitees on premises. In *Mallet v. Pickens*, 206 W.Va. 145, 522 S.E.2d 436 (1999), the Supreme Court of Appeals of West Virginia decided to follow the "modern trend" of only maintaining a distinction between trespassers and others:

[O]ur research reveals that at least 25 jurisdictions have abolished or largely abandoned the licensee/invitee distinction. Among these 25 jurisdictions that have broken with past tradition, at least 17 have eliminated or fundamentally altered the distinction. Another eight of

equipment and meters, entered the premises of One Hour Valet in connection with his duties. Cowan was injured when he fell through the floor in a back room of the dry cleaning business. In citing *Sheffield* and other cases, the court found:

> The status of the appellant was clearly that of an invitee. He was charged with the duties of inspecting the electrical equipment and checking the meters. In such cases it is held that such inspector or a person with such duties *has the status of an invitee because he was entering the premises in the performance of his duties. . . .* [W]here a person has some business with the landowner there is an implied invitation to enter.

*Cowan,* 157 S.E.2d at 849 (citations omitted)(emphasis added). Additionally, the court made clear "the appellant was not only an invitee of the tenant but was an invitee of the landlord because it is clear from the evidence in this case that one of the reasons for his inspection and checking of the electrical meters located in the back room of the building owned by the appellees was to avoid and correct any situation that may have existed that would create a fire hazard to the building." *Id.* The court further noted Cowan "was not only an *invitee* of the appellees but was there on the premises for the *benefit* of the appellees or landowner." *Id.* (emphasis added).

The party in control of the premises is generally obligated to exercise the appropriate level of care to keep the premises safe for other persons performing work on the premises. In Pennsylvania, a subcontractor on a construction job owes to employees of other subcontractors, on the same site, the care

---

the 25 have eliminated even the trespasser distinction. And, of those retaining the old scheme, judges in at least five of those states have authored vigorous dissents or concurrences arguing for change.

*Mallet,* 522 S.E.2d at 444–45 (footnotes omitted)(South Carolina is not one of the 25 jurisdictions cited by the court). Expressly, the court stated:

> Today we hold that the common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that being that a landowner or possessor need only refrain from willful or wanton injury. Though our decision might seem a radical departure from past cases, in its basic philosophy it is not.

*Mallet,* 522 S.E.2d at 446.

due a business visitor from a possessor of land. *See McKenzie v. Cost Bros., Inc.,* 487 Pa. 303, 409 A.2d 362 (1979).

This principle was elucidated in *Duffy v. Fischbach & Moore, Inc.,* 386 Pa. 533, 126 A.2d 413 (1956). James Duffy, an employee of a subcontractor hired to install telephones in a newly erected building, was injured when he tripped over an extension cord placed in a poorly lit hallway by employees of the carpenter subcontractors. Duffy filed an action against the Peterson Company, the carpenter subcontractors, and Fischbach & Moore, the electrical subcontractors.

In affirming a judgment for Duffy, the Supreme Court of Pennsylvania cited the Restatement of Torts § 332, which defines business visitors as "those who come upon the land for a purpose which is connected with their own business which itself is directly or indirectly connected with any purpose, business or otherwise, for which the possessor used the land." This language is similar to the Restatement (Second) of Torts § 332(3) (1965), which reads: "A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." The court enunciated:

> All individual sub-contractors engaged in a common enterprise owe to each other the duty of care required to business visitors.... The Western Electric Company, employer of the plaintiff, was on the premises of the Alcoa Building furthering its work which was connected with the business purpose for which Fischbach & Moore and the Peterson Company were also there, namely, the building of the Alcoa skyscraper. The duty which Fischbach & Moore and the Peterson Company owed to the employees of the [general contractor], they owed equally as well to the employees of their fellow sub-contractors who in turn, owed a similar duty to [the general contractor] and others engaged in the same building operation.

*Duffy,* 126 A.2d at 416.

In *Massey v. F.H. McGraw & Co.,* 233 F.2d 905 (6th Cir.1956), Paul Massey, an inspector with a Kentucky architectural firm, was injured while performing an on-site inspection of the contractor's work. A rung on a ladder made with scrap wood by the contractor broke as Massey was descending into

a ditch to inspect some water pipe welds. The Sixth Circuit Court of Appeals found the inspector was an invitee, "rather than a mere licensee." *Id.* at 907. The court further illuminated:

> The presence of the [inspector] was not wholly disconnected from any benefit or service to the [contractor], ... but was for the mutual benefit of both parties. Accordingly, the [contractor] owed to the [inspector] a duty to use ordinary care to have the premises and appliances in a reasonably safe condition for use in a manner consistent with the purpose of the invitation.

*Massey,* 233 F.2d at 907 (citations omitted).

The case of *Fred Howland, Inc. v. Morris,* 143 Fla. 189, 196 So. 472 (1940), is enlightening. Walter Morris, a city of Miami building inspector, was injured while taking an inspection tour of a partially completed building when he fell through the floor. The concrete floor had not been poured, so the inspector could only stand on the floor's "pan," one of a series of forms which would eventually hold the concrete. The Supreme Court of Florida concluded the inspector was a business invitee:

> A building inspector, while his presence is in part a necessity, is present also by virtue of an *implied contractual relationship* with the city, wherein the city grants a permit to build, provided the city, through its authorized agents, is allowed to make detailed inspections of the component parts of the building as they are assembled. The inspector is on the premises for *a purpose connected with the business* in which the owner or occupant is engaged or which he permits to be conducted on the premises, and *there is a mutuality of interest in the subject to which the inspector's presence relates.....*
>
>       ....
>
> ... "Invitation of the owner or occupant is implied by law where the person goes on the premises for the benefit, real or supposed, of the owner or occupant, or in a matter of mutual interest, or in the usual course of business, or for the performance of some duty. And the owner or person in possession of the premises owes it as a duty to those who come on the premises by invitation, express or implied, to

exercise reasonable or ordinary care to keep and maintain his premises in safe condition."

*Fred Howland, Inc.*, 196 So. at 476 (citations omitted)(emphasis added). *See also Helton v. Norbom*, 492 So.2d 729 (Fla.Dist.Ct.App.1986)(citing *Fred Howland, Inc.*, for the proposition that an implied contractual relationship between a city supplying services to an apartment complex will establish a city inspector's status as a business invitee).

In *Painter v. Hudson Trust Co.*, 2 N.J. Misc. 1137, 126 A. 636 (N.J.Sup.1924), Wid Painter, a foreman employed by the New York Telephone Company, was injured when an iron ventilator fell from the wall of an old building owned by the Hudson Trust Company and struck Painter. Hudson had just finished moving into a new building and its old building was to be demolished. Painter, after connecting the phone lines to the new facility, was charged with cutting the lines into the old building. The trial judge charged the jury that Painter was merely a licensee and, therefore, any contributory negligence on the part of Painter in knocking the ventilator with his ladder could bar his recovery completely. However, the jury disregarded any contributory negligence and returned a verdict in favor of Painter.

The Supreme Court of New Jersey affirmed the jury verdict but criticized the jury charge. The court declared Painter was an invitee because his work conferred some benefit on Hudson. The court expounded:

[T]he charge erroneously limited the obligation of the defendant to that of a mere licensor, while, under the undisputed facts of the case, the duty imposed upon it with regard to affording protection to the plaintiff, while engaged in his work, was that imposed upon a person who invites another upon his premises to perform some act for his benefit. The defendant company had asked the telephone company to install a telephone service in the new unit; and this included, as we think, the removal of the old service from the building that was about to be torn down. It was in compliance with this request that the plaintiff was present at the place of the accident. Being an invitee, it is quite immaterial whether the ventilator fell because of the ladder being pushed against it or for some other reason; for, clearly, if

the attachment of the ventilator to the wall had become so insecure that it was a menace to the safety of anybody engaged in removing the old telephone service, the defendant company was plainly negligent in permitting such a condition to exist.

*Painter*, 126 A. at 637.

The Appellate Court of Indiana was faced with a situation where the invitee status was inferred in *Rink v. Lowry*, 38 Ind.App. 132, 77 N.E. 967 (1906). Jean Lowry was employed as a telephone repairman who was sent by the New Telephone Company to fix the phone batteries at the Rink Flats. The batteries were located in the bottom of the building's elevator shaft. Lowry asked Mallory Miller, a janitor who had general control of the building, and Homer Johnson, the elevator operator, not to use the elevator while he was working. The elevator, nevertheless, was used and Lowry was injured when the elevator counterweights came down on top of him. The defendants argued Lowry was a licensee because he was there solely for the benefit of the telephone company. The court found Lowry was fixing the phones for the mutual benefit of the landowner as well as the telephone company. "The invitation may be inferred from the facts proven"; therefore, the "Appellee was not a mere licensee." *Id.* at 970.

In some cases, a worker on premises loses an invitee status when the worker exceeds the scope of the work. "If the invitee goes outside of the area of his invitation, he becomes a trespasser or a licensee, depending upon whether he goes there without the consent of the possessor, or with such consent." Restatement (Second) of Torts § 332 cmt. 1 (1965).

The loss of invitee status is usually a question for the jury. In *Philibert v. Benjamin Ansehl Co.*, 342 Mo. 1239, 119 S.W.2d 797 (1938), Benjamin Philibert, employed by the Southwestern Bell Telephone Company in St. Louis, was injured when a shelf of about 400 cartons of empty jars fell on him. Philibert was installing a private telephone exchange in defendant's new facility. For the installation, he needed a wooden box constructed to cover pipes that were sticking through the floor where the phone bank was to be installed. When Philibert was in the factory room portion of the building

talking to the employee responsible for constructing the box, the shelf fell on him.

The issue examined by the Supreme Court of Missouri was whether Philibert, when he went into the factory section of the building, retained his status as an invitee. The defendant claimed Philibert could not recover because he was, when injured, at a place to which he was not actually or impliedly invited. The court determined "the question of whether plaintiff exceeded the scope of his invitation by going to the factory room to see about the box was one for the jury." *Id.* at 801.

## *CONCLUSION*

We hold meter readers enter premises in furtherance of a mutual benefit to the landowner as well as the utility company. We rule that, because Sims was a business visitor invited to enter or remain on the property for a purpose directly or indirectly connected with the business of and for the mutual benefit of Giles, Sims was an invitee. We adopt the widespread contractual analysis of establishing either an implied or express invitation for a meter reader to come on premises. Our holding conforms with the common understanding of jurisdictions that have retained the distinctions between invitee and licensee status. Accordingly, the order of the Circuit Court is

**REVERSED and REMANDED.**

HEARN, C.J., and STILWELL, J., concur.