THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Rachelle Westerburg as Guardian ad Litem for Robin
Forstein,        Appellant,
 
 
 

v.

 
 
 
Cato Corporation,       
Respondent.
 
 
 

Appeal From Colleton County
Jackson V. Gregory, Circuit Court Judge

Unpublished Opinion No. 2003-UP-220
Heard September 12, 2002  Filed March 
 20, 2003

REVERSED AND REMANDED

 
 
 
Ronnie L. Crosby, of Hampton; for Appellant.
Matthew H. Henrikson, of Charleston; for Respondent.
 
 
 

 PER CURIAM:  Rachelle Westerburg, 
 as guardian for her daughter, Robin Forstein, appeals the trial judges grant 
 of a directed verdict in favor of Cato Corporation.  The trial judge held the 
 merchant, as a matter of law, was not liable on a false arrest cause of action 
 for an investigatory detention by the police.  We reverse and remand. 
FACTS
Forstein, who was about 13 years old 
 at the time, and three friends walked to Cato while the mother of one of the 
 friends was shopping in Wal-Mart in the same strip mall.  Forstein tried 
 on jeans and a blouse, decided not to purchase either, put them back on the 
 racks, and left the store with her friends to return to Wal-Mart.  The 
 Cato store manager did not see Forstein put the blouse back and could not locate 
 it.  The girls left the store quickly, and the manager called the police.  When 
 the officers arrived, the manager accompanied them to Wal-Mart and identified 
 Forstein as the girl she suspected of shoplifting.  The police escorted Forstein 
 outside to the sidewalk, asked her to unzip her jacket, shake out her pants, 
 and show them the money in her pocket.  At their request, she also accompanied 
 them back to Cato and showed them where she put the blouse.  The store manager 
 was present during the investigation and conferred with the police a couple 
 of times but did not speak to Forstein at any point.  The investigatory 
 detention lasted six or seven minutes.  Forstein stated the police were polite 
 in their questioning and did not place her under arrest or accuse her of anything. 
  Nonetheless, Forstein was crying and visibly upset from the incident.  
 Since then, she will not try on clothes in a store.  
At the close of the testimony, Cato moved for a 
 directed verdict based on the merchants statutory defense. 
 [1]   The trial judge initially denied Catos motion.  However, when court 
 convened the next morning, the judge directed a verdict for Cato, holding that 
 because Cato called the police, the statute did not apply, but Cato could not 
 be held responsible for false arrest as a matter of law.
STANDARD OF REVIEW

In ruling on a motion for directed verdict, a court must view 
 the evidence and all reasonable inferences in the light most favorable to the 
 non-moving party.  When the evidence yields only one inference, a directed verdict 
 in favor of the moving party is proper.  The trial court can only be reversed 
 by this Court when there is not evidence to support the ruling below.

Swinton Creek Nursery v. Edisto Farm Credit, 
 334 S.C. 469, 476-77, 514 S.E.2d 126, 130 (1999) (citations omitted).  In deciding 
 whether to grant or deny a directed verdict motion, the trial court is concerned 
 only with the existence or non-existence of evidence.  Sims v. Giles, 
 343 S.C. 708, 714, 541 S.E.2d 857, 861 (Ct. App. 2001); see also Pond 
 Place Partners, Inc. v. Poole, 351 S.C. 1,15, 567 S.E.2d 881, 888 (Ct. App. 
 2002).  On appeal from the grant of a directed verdict, this court employs the 
 same standard as the trial court.  Weir v. Citicorp Natl Servs., Inc., 
 312 S.C. 511, 515, 435 S.E.2d 864, 867 (1993); Sims, 343 S.C. at 714-15, 
 541 S.E.2d at 860-61.  
LAW/ANALYSIS
Westerburg argues the circuit court erred in granting 
 Catos directed verdict motion because the store managers conduct creates a 
 jury question as to whether Cato improperly instigated the false arrest.  Cato 
 asserts no action for false arrest can be maintained where Forstein was lawfully 
 detained by the police, the manager never directly restrained Forstein, no agency 
 relationship existed between Cato and the police, and that any reliance on Wingate 
 v. Postal Telegraph and Cable Company is misplaced.  204 S.C. 520, 30 S.E.2d 
 307 (1944).  We agree with Westerburg.  
In instigating an arrest or detention, a merchant 
 may open itself to liability.  Whether a merchant has instigated an arrest is 
 a question of fact for the jury.  Accordingly, a private citizen at whose request, 
 direction, or command a police officer makes an arrest without a warrant is 
 liable if the arrest turns out to be unlawful. . . .  32 Am.Jur.2d False 
 Imprisonment § 40 (1995).  [O]ne who instigates [the unlawful confinement 
 of another] is subject to liability to the person confined for the false imprisonment.  
 Restatement (Second) of Torts § 45A (1965).  
South Carolina jurisprudence has drawn a fine factual 
 line and has held that a merchant, while not liable for mere reporting, may 
 be liable for instigating an arrest.  The Wingate case, however, contains 
 statements that are somewhat contradictory. 

Where a person merely directs the attention of a police officer 
 to what he supposes to be a breach of the peace, or gives to such officer facts 
 indicating such, and the officer, without other direction, arrests the offender 
 on his own responsibility, the person who did nothing more than communicate 
 the facts to the officer is not liable for causing the arrest, even though it 
 is made without a warrant. . . .  Those who honestly seek the enforcement of 
 the law *** and who are supported by circumstances sufficiently strong to warrant 
 a cautious man in the belief that the party suspected may be guilty of the offense 
 charged, should not be made unduly apprehensive that they will be held answerable 
 in damages.
But it is equally well settled that where a private person 
 induces an officer by request, direction or command to unlawfully arrest another, 
 he is liable for false imprisonment.  The charge of false imprisonment is 
 not confined to the party who unlawfully seizes or restrains another, but it 
 likewise extends to any person who may cause, instigate or procure an unlawful 
 arrest.  

Wingate, 204 S.C. at 527-28, 30 S.E.2d at 
 310-11 (citations omitted) (emphasis added).  Catos argument, in essence, is 
 that it is shielded from liability because the police officers exercised their 
 own independent judgment in investigating the reported theft without any further 
 input from the manager beyond identifying Forstein as the suspected shoplifter.  

However, Catos manager was more involved in the 
 identification and detention than was the messenger boy in Wingate.  
 In Wingate, the messenger boy reported to the police that the unknown 
 occupant of a vehicle hollered at him in a threatening manner.  He was able 
 to get the license tag number of the vehicle, gave it to the police officers, 
 and requested that they investigate.  The following day, Wingate, to whom the 
 vehicle belonged, was arrested on the strength of the report of the vehicles 
 license tag, without regard to whether Wingate herself committed the acts complained 
 of.  Id. at 523-25, 30 S.E.2d at 309-10.  
In the instant case, Catos manager followed Forstein 
 into Wal-Mart with the officers, pointed out Forstein as the suspect, remained 
 present while the police detained her, and testified at trial that she called 
 the police to help me identify where my merchandise was.  This is not merely 
 an instance of a neutral observer reporting a crime, but rather an interested 
 party asking the police to conduct an investigation of a specific person rather 
 than a specific crime.  Cato, and its manager, clearly had a monetary and proprietary 
 interest in recovering or preventing loss of merchandise.  The investigation 
 was initiated solely because of Catos managers allegations.  This is not the 
 same as a member of the general public observing the commission of a crime and 
 merely making a report to the police.  On these narrow facts, there is little 
 difference between the police detaining Forstein and the manager detaining Forstein 
 herself.  Therefore, taking the evidence in the light most favorable to the 
 non-moving party, sufficient evidence exists to create a jury issue as to whether 
 Cato had reasonable cause in involving the police and having Forstein detained 
 in such a public manner.  

The only duty imposed upon a private citizen is to communicate 
 such facts and information to a police officer as are necessary to allow the 
 officer the opportunity to apprehend the offender.  Any further actions taken 
 by a private citizen must be justified under the circumstances, . . . which 
 brings us to the issue of probable cause.

Gathers v. Harris Teeter Supermarket, Inc., 
 282 S.C. 220, 228, 317 S.E.2d 748, 753 (Ct. App. 1984) (citations omitted) (emphasis 
 added).  Any further actions presumably includes instigating a detention.  
 Whether the merchant in fact instigated the detention is a jury question.  [T]he 
 jury could have reasonably inferred that appellant set the proceedings in motion 
 which culminated in the unlawful arrest of respondent and that such arrest was 
 a proximate result of the initial conduct of appellant.  Wingate 204 
 S.C. at 529, 30 S.E.2d at 311.  
Considering these facts in the light most favorable 
 to Westerburg, a jury could conclude the merchant was using the police to conduct 
 the sort of investigation contemplated under the provisions of the merchants 
 defense statute, and was tantamount to the merchant doing it itself.  If the 
 jury concluded that was indeed the case, then under the merchants defense statute 
 (§16-13-140), the question becomes one of reasonableness.  Because a jury question 
 remains whether Cato had reasonable cause to call the police, we reverse the 
 trial judges grant of a directed verdict for Cato.  The sole question for the 
 jury to determine is whether Catos manager had reasonable cause to call the 
 police without first conducting any further investigation.  
Cato asserts this states precedents of Watkins 
 and Bushardt are controlling.  We find these precedents easily distinguishable.  
 The evidence is adequate to support a permissible inference that the police 
 were called without sufficient investigation, but does not demonstrate the level 
 of willfulness necessary to support malice in an action for malicious prosecution.  
 Watkins v. Mobil Oil Co., 281 S.C. 79, 313 S.E.2d 641 (Ct. App. 1984); 
 Bushardt v. United Inv. Co., 121 S.C. 324, 113 S.E. 637 (1922).  In Watkins, 
 the plaintiff was arrested by the police pursuant to a warrant.  Likewise in 
 Bushardt, the plaintiff was held in jail overnight based solely on the 
 merchants identification of him.  Here, the police made no arrest but merely 
 conducted an investigatory detention, arguably at the stores direction.  Because 
 the police found no reason to prosecute following their questioning, Forsteins 
 only viable cause of action would be for false arrest. 
Because we reverse based on the issue discussed 
 above, we find it unnecessary to address Westerburgs remaining issue.
 REVERSED AND REMANDED.
 CONNOR, ANDERSON, and STILWELL, JJ., concur.

 
 
 [1]           
 In any action brought by reason of having been delayed by a merchant or merchants 
 employee or agent on or near the premises of a mercantile establishment for 
 the purpose of investigation concerning the ownership of any merchandise, 
 it shall be a defense to such action if:  (1) The person was delayed in a 
 reasonable manner and for a reasonable time to permit such investigation, 
 and (2) reasonable cause existed to believe that the person delayed had committed 
 the crime of shoplifting. 
 
 S.C. Code Ann. § 16-13-140 (2003).