675 S.E.2d 783

**Bessie C. PRINGLE and Burdy Pringle, Appellants,**

v.

**SLR, INC. OF SUMMERTON, d/b/a Knights Inn, Respondent.**

No. 4513.

Court of Appeals of South Carolina.

Heard Jan. 6, 2009.

Decided Feb. 27, 2009.

Rehearing Denied May 4, 2009.

398

John Eagle Miles, Michael McKinney Jordan, both of Sumter, for Appellants.

Marvin E. McMillan, Jr., of Sumter, for Respondent.

THOMAS, J.

In this negligence action, plaintiffs Bessie and Burdy Pringle appeal the grant of summary judgment to SLR, Inc. of Summerton, d/b/a Knights Inn. We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 18, 2004, Bessie Pringle went with her husband Burdy Pringle and their ten-year-old granddaughter to the Knights Inn restaurant in Summerton for Sunday lunch, as they had done almost every Sunday for several years. When the Pringles arrived at the restaurant, the hostess seated them. The Pringles served themselves from the buffet and returned to the table to eat their meal. After Burdy left the table to pay, the chair in which Bessie was sitting suddenly collapsed as she reached for her pocketbook on the table, causing her to fall to the floor. Subsequently, she was transported from the restaurant to the hospital by ambulance. As a result of the accident, Bessie suffered a meniscus tear to her knee, which required surgery. Shortly after the accident, Knights Inn discarded the chair.

On February 9, 2005, the Pringles jointly filed a lawsuit against Knights Inn. Bessie sued for negligence, and Burdy brought a claim for loss of consortium.

In her deposition, Bessie testified that she did not notice anything wrong with the chair before it collapsed and that the chair was not "rickety," "wobbly," or otherwise unstable. She did not see the chair after she fell and could not testify as to how it broke; however, she maintained the legs of the chair had broken. In addition, Bessie had never experienced any problems with chairs during previous visits to the Knights Inn and had no direct knowledge of any other patrons who had experienced problems with the chairs at the restaurant. Bessie claimed, however, a Knights Inn employee approached her a few weeks after the incident and told her that an elderly woman fell and hurt herself at the restaurant when a chair collapsed. During her deposition, after viewing three photographs of different chairs provided by Knights Inn's attorney, Bessie testified the chair in which she was sitting when she fell appeared to look like the chairs in the photographs.[1]

Burdy also testified in his deposition that there was no indication of any problem with the chairs at their table and that he was not directly aware of any problems with chairs at Knights Inn. Burdy identified one of the chairs in the photographs as the same type of chair that collapsed under Bessie. According to Burdy, the chair was in two separate pieces after it collapsed and the right-side legs of the chair were completely loose and broken from the base of the seat. Burdy also claimed Bhupen Patel, the owner and manager of the restaurant, asked him to pass the chair to him immediately following the incident.

The Pringles named Angus McDuffie as an expert witness in the case. McDuffie has no degrees or specialized training; however, he has been in the furniture business for forty years, selling both commercial and residential furniture and repairing broken furniture. In his deposition, McDuffie testified about the difference between residential and commercial

---

1. The photographs were not included in the record on appeal; however, it appears from counsel's remarks during the deposition that the only difference among the chairs depicted in the photographs was that one of them had white paint on the back and the other two were of a solid wood color.

chairs, explaining the two types are different in construction. According to McDuffie, the legs on commercial chairs cannot be removed from the structure of the chair because the leg system "is an integral part of the seating system" where the legs are mounted directly into the seat itself, creating one single unit. In contrast, McDuffie testified residential chairs have separate leg and seat units that operate independently of one another and the legs are attached to a rail on the bottom of a seat rather than into the seat itself; thus, all of the stress on the seat is absorbed at the point where the legs attach. McDuffie opined that commercial chairs are different from residential chairs in their ability to withstand greater frequency of use and that residential chairs are not substantial enough for use in a commercial setting.

After viewing the photographs of the chairs, McDuffie stated the chairs in the pictures were residential chairs unfit for use in a commercial setting. According to McDuffie, the chairs could not sustain "heavy general use without causing some type of failure of the back or leg support system." McDuffie explained that over time and frequency of use, such chairs would show signs of wear, indicated by wobbliness, weakness, loss of parts, squeaking, and screws coming out. Furthermore, McDuffie indicated an inadequate chair would show signs of being shaky and loose and a chair without such signs would not indicate wear from frequency of use. Without inspecting the subject chair, McDuffie could not give an opinion as to whether it collapsed because of frequency of use or sudden failure.

McDuffie also indicated commercial and residential chairs would appear the same to the untrained eye and purchasers would not know a chair was for residential use unless the seller informed them. McDuffie indicated some residential chairs are stamped with a notice that the chair is for residential use; however, he had no opinion as to whether the manufacturer of the chair involved in Bessie's fall told the buyer the chairs were for residential use only. He also stated he had not examined the particular chair involved in the incident and therefore could not state whether it contained such a stamp.

Patel testified in deposition that maintenance is performed at Knights Inn on Saturdays. He further noted there are three types of chairs at the Knights Inn. Some of the chairs came with the restaurant when he bought it, and others he purchased later. Patel could not say whether or not the subject chair was one he purchased. Patel also testified that after the subject chair collapsed, the legs were separated from the chair, and he immediately removed it. He never saw the chair again, and it never occurred to him to save the chair in anticipation of a lawsuit. Patel also confirmed the subject chair was the same as the chairs depicted in the photographs, which encompassed all three types of chairs at the Knights Inn. According to Patel, the chairs at the Knights Inn all have screws connecting the legs to rails at the base of the seat. Patel admitted another incident occurred prior to Bessie's fall when a chair broke at the Knights Inn; however, he claimed the person sitting in the chair was extremely heavy and did not fall. He also acknowledged the subject chair was the only other chair he had taken out of use.

Following discovery, Knights Inn made a motion for summary judgment, arguing the Pringles failed to offer evidence creating a genuine issue of material fact regarding its negligence. The Pringles contended summary judgment was inappropriate because the evidence showed the chairs used by the restaurant were not fit for commercial use. Additionally, the Pringles made a motion for sanctions against Knights Inn for spoliation of evidence, arguing: (1) summary judgment was inappropriate because Knights Inn disposed of the subject chair; and (2) the Pringles were entitled to an inference that the subject chair would have been adverse to the position of Knights Inn.

The trial court granted summary judgment on both causes of action, concluding the Pringles failed to offer any evidence that Knights Inn knew the subject chair was defective or in a dangerous condition. Furthermore, the court found there was no evidence showing either that Knights Inn knew the subject chair was for residential use only or that the use of residential chairs instead of commercial chairs would constitute negligence.

Additionally, the trial court ruled there was no evidence of spoliation that would defeat summary judgment. Though the trial court noted an inference may be drawn that the lost or destroyed chair would have been adverse to Knights Inn's case, it concluded there was already evidence the subject chair was defective and summary judgment was still appropriate because the Pringles failed to offer evidence Knights Inn knew or should have known the chair was defective. This appeal followed.

## ISSUES

Was the grant of summary judgment to Knights Inn proper in view of (1) evidence presented by the Pringles that the chair in question was of residential rather than commercial quality, and (2) the fact that the chair was not available for their inspection during this lawsuit?

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard of review as the circuit court under Rule 56, SCRCP. *Cowburn v. Leventis*, 366 S.C. 20, 30, 619 S.E.2d 437, 443 (Ct.App.2005). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. To determine whether any triable issues of fact exist, the reviewing court must consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).

## DISCUSSION

### I. Creation of an unreasonably dangerous condition

■ The Pringles first argue the grant of summary judgment was error because the trial court focused solely on whether Patel knew or should have known of the unsafe condition allegedly created by the chair in which Bessie was sitting when she fell. Citing *Cook v. Food Lion*, 328 S.C. 324, 491 S.E.2d 690 (Ct.App.1997), the Pringles argue the court should have considered the principle that, in a premises liability case, if the defendant created the allegedly dangerous

condition, it is not necessary for the plaintiff to show the defendant had prior actual or constructive notice of the dangerous condition. *Cook*, 328 S.C. at 327–28, 491 S.E.2d at 691–92. We disagree.

■ To recover damages for injuries caused by a dangerous or defective condition on a defendant's premises, a plaintiff "must show either (1) that the injury was caused by a specific act of the respondent which created the dangerous condition; or (2) that the respondent had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Anderson v. Racetrac Petroleum, Inc.*, 296 S.C. 204, 205, 371 S.E.2d 530, 531 (1988).

■ In *Cook*, the plaintiff claimed a wrinkled mat placed by the defendant's employees on the floor for its customers caused her to fall and suffer injury. During the trial, she proffered testimony from several of the defendant's employees that the floor mats used in the store had a tendency to wrinkle, had to be straightened, and caused people to trip and stumble on several occasions. Ultimately, this Court held the trial judge erred in directing a verdict for the defendant because the tendency of the mats to wrinkle created a dangerous condition and the defendant was aware of the tendency even though it may not have been aware the particular mat in question was in fact wrinkled immediately before the plaintiff fell on it. *Cook*, 328 S.C. at 329, 491 S.E.2d at 692. The showing that a defendant created a condition that led to a plaintiff's injury is not, however, sufficient to survive a summary judgment motion unless there is evidence that in creating the condition, the defendant acted negligently. *See Shain v. Leiserv, Inc.*, 328 S.C. 574, 576, 493 S.E.2d 111, 112 (Ct.App. 1997) (stating the evidence required to show a condition created by the defendant was indeed hazardous must show the defendant was negligent either in the choice of materials used to create the condition or in the manner of their application).

Applying these principles to the present case, we agree with the trial court that the Pringles did not present evidence sufficient to create a genuine issue of material fact that Knights Inn was negligent in placing residential quality chairs in the restaurant. Although McDuffie opined that residential chairs like the ones used in the restaurant are not substantial enough for use in a commercial setting because they cannot

sustain heavy general use, he never stated that a residential chair in and of itself is a dangerous condition. Moreover, although McDuffie stated residential chairs "could not withstand heavy general use," he explained that this was because, over time, they would begin to show signs of wear, such as being wobbly or weak with loss of parts or screws coming out. Bessie's own testimony that the chair in which she was sitting when she fell was not unstable supports the trial court's finding that there was no evidence that Knights Inn knew or should have known that the chair was in danger of collapse or other failure.

## II. Spoliation

■ The Pringles also argue they are entitled to an inference that, because the chair in question was lost or destroyed by Knights Inn, it would have been adverse to Knights Inn's case. We disagree.

■ In *Kershaw County Board of Education v. U.S. Gypsum Co.*, 302 S.C. 390, 394, 396 S.E.2d 369, 372 (1990), the supreme court upheld a jury charge that "when evidence is lost or destroyed by a party an inference may be drawn by the jury that the evidence which was lost or destroyed by that party would have been adverse to that party." As an initial matter, however, the party seeking the inference "must be prepared to make a showing that the document or evidence might reasonably have supported whatever presumption is being requested of the fact finder." Kevin Eberle, *Spoliation in South Carolina*, S.C. Law., Sept. 2007, 26, 32. Here, in view of the evidence already presented, the chair in question would not have provided any additional information indicating that its use at the restaurant would have constituted negligence on the part of Knights Inn. Bessie's own testimony established there was no indication the chair was wobbly, weak, unstable, or otherwise defective immediately prior to its collapse. Furthermore, although the Pringles suggested the chair may have been stamped with a disclaimer indicating it was for residential use, they failed to provide any evidence that such a stamp was in fact on the chair. Although McDuffie testified that some residential chairs include a stamped disclaimer, it was undisputed that any chair, whether or not it was classified as a residential chair or stamped as such, would show signs of wear before collapsing and that there was no

indication that any such signs were apparent in the chair in question. We therefore hold that any inference that a jury could make from the absence of the chair would not change the fact that there was no indication the chair was dangerous or unfit for use.

## CONCLUSION

■ We agree with the trial court that the Pringles did not present a genuine issue of material fact as to whether the use of a residential chair in a commercial establishment, without more, constitutes evidence of negligence on the part of the owner of the establishment. To hold otherwise would be directly at odds with the applicable standard of care that "[a] merchant is not an insurer of the safety of his customer but owes only the duty of exercising ordinary care to keep the premises in a reasonably safe condition." *Garvin v. Bi–Lo, Inc.*, 343 S.C. 625, 628, 541 S.E.2d 831, 832 (2001). We also uphold the trial court's determination that, because there was no evidence that Knights Inn knew or should have known the chair would collapse, the doctrine of spoliation did not preclude the grant of summary judgment.

**AFFIRMED.**

HUFF and LOCKEMY, JJ., concur.