# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Christine LeFont, Appellant,

v.

City of Myrtle Beach; Myrtle Beach Convention Center Hotel Corporation, Respondents.

Appellate Case No. 2017-001258

———————

Appeal From Horry County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Opinion No. 5715
Heard February 4, 2020 – Filed March 11, 2020

———————

## REVERSED AND REMANDED

———————

Stephen Lewis Goldfinch, Jr., and Thomas William Winslow, both of Goldfinch Winslow LLC, and Ryan P. Compton, of Inlet Law Group, LLC, all of Murrells Inlet, for Appellant.

Christian Stegmaier, of Collins & Lacy, PC, of Columbia, and Amy Lynn Neuschafer, of Collins & Lacy, PC, of Murrells Inlet, for Respondent City of Myrtle Beach.

———————

**LOCKEMY, C.J.:** In this premises liability action, Christine LeFont argues the circuit court erred in granting a directed verdict to the City of Myrtle Beach (the City). We reverse and remand.

**FACTS**

This premises liability action arises out of LeFont's trip and fall in a parking lot behind the Myrtle Beach Convention Center[1] (the Convention Center) on August 13, 2014.  LeFont and her husband were vendors participating in a trade show at the Convention Center.  The Convention Center has a large lot dedicated to public parking.  A small gated employee parking lot is located immediately behind the Convention Center.  On the morning of the incident, LeFont entered the employee parking lot and dropped off her husband near the loading docks to allow him to carry boxes of product into the Convention Center.  LeFont then asked the security guard at the gate if she could briefly park in the employee lot while she went inside the Convention Center to determine whether she needed to return to the warehouse for more product.  After receiving permission to park, LeFont walked toward the Convention Center and tripped over a small pothole[2] and fell.  LeFont sustained injuries in the fall, including a broken wrist, a broken forearm, and two broken elbows.

On January 5, 2015, LeFont filed a complaint against the City and the Convention Center asserting a negligence cause of action against both defendants.  The City filed an answer denying liability and raising several affirmative defenses alleging, in part, that LeFont's action was subject to certain provisions of the South Carolina Tort Claims Act[3].

Prior to trial, the parties stipulated to the dismissal of the Convention Center.  The case proceeded to trial on September 6, 2016.  At trial, following the close of LeFont's case, the City moved for a directed verdict.  The circuit court denied the motion.  Subsequently, following the close of all evidence, the City moved again for a directed verdict.  The circuit court granted the City's motion and directed a verdict on multiple grounds, finding: (1) LeFont was a licensee; (2) there was no evidence the City breached its duty owed to LeFont as a licensee; and (3) there was no evidence the City had constructive notice of the pothole.

---

[1] The City owns the Convention Center.

[2] The hole was approximately four to six inches in diameter and one and a half inches deep.

[3] S.C. Code Ann. §§ 15-78-10 to -220 (2005 & Supp. 2019).

On September 20, 2016, LeFont filed a Rule 59(e), SCRCP, motion to alter or amend. The circuit court denied LeFont's motion in April 2017. This appeal followed.

**STANDARD OF REVIEW**

When reviewing the circuit court's ruling on a directed verdict motion, this court must apply the same standard as the circuit court "by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 27-28, 602 S.E.2d 772, 782 (2004). An appellate court will reverse the circuit court's ruling on a directed verdict motion only when there is no evidence to support the ruling or when the ruling is controlled by an error of law. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434-35, 629 S.E.2d 642, 648 (2006). "When the evidence yields only one inference, a directed verdict in favor of the moving party is proper." *Wright v. Craft*, 372 S.C. 1, 22, 640 S.E.2d 486, 498 (Ct. App. 2006). "On the other hand, the [circuit] court must deny a motion for a directed verdict when the evidence yields more than one inference or its inference is in doubt." *Id.* "When considering a directed verdict motion, neither the [circuit] court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Burnett v. Family Kingdom, Inc.*, 387 S.C. 183, 188-89, 691 S.E.2d 170, 173 (Ct. App. 2010).

**LAW/ANALYSIS**

**I.      Circuit Court Ruling**

As an initial matter, the parties disagree as to the circuit court's basis for granting a directed verdict.

The City argues the circuit court granted its motion for a directed verdict on multiple grounds, including a lack of evidence establishing liability under section 15-78-60(15) of the South Carolina Tort Claims Act (the Act)[4] and under a

---

[4] Pursuant to section 15-78-60(15), a governmental entity is not liable for a loss resulting from

> a defect or a condition in, on, under, or overhanging a
> highway, road, street, causeway, bridge, or other public
> way caused by a third party unless the defect or condition
> is not corrected by the particular governmental entity

traditional premises liability analysis. The City contends LeFont failed to appeal the court's ruling based on application of the Act, and, therefore, the court's ruling on that ground is the law of the case.

LeFont contends the circuit court did not rule on section 15-78-60(15). LeFont admits the court and the parties discussed the Tort Claims Act during arguments on the directed verdict motion, but she asserts the court did not rule upon every issue discussed.

Pursuant to the record, the circuit court held the following after a lengthy discussion with counsel:

> [S]o that creates a twofold—a two barrel appeal if you want to take it . . . .
>
> I'm finding in this particular factual situation my conclusion is these people meet the definition of a being a—your lady, the Plaintiff met the definition of a licensee, not an invitee, and was on the premises certainly not as a trespasser. She had every right to be there. And she had every right to expect the premises to be—not contain any latent defects or any problems that would have been hidden, and be on notice of that . . . .
>
> But primarily I don't find that there's any evidence that would establish constructive notice of the pothole and therefore require that the City to take any action independent of what was done.

We agree with LeFont that the circuit court did not rule on the Tort Claims Act issue. Although the court discussed the Act with counsel prior to ruling, it did not state it was granting a directed verdict based on the Act.

## II.    LeFont's Status

---

> responsible for the maintenance within a reasonable time after actual or constructive notice.

S.C. Code Ann. § 15-78-60(15) (2005).

LeFont argues the circuit court erred in finding she was a licensee, not an invitee, while at the Convention Center the day of her injury.  We agree.

"To establish negligence in a premises liability action, a plaintiff must prove the following three elements:  (1) a duty of care owed by defendant to plaintiff; (2) defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Singleton v. Sherer*, 377 S.C. 185, 200, 659 S.E.2d 196, 204 (Ct. App. 2008).

The nature and scope of duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury.  *Sims v. Giles*, 343 S.C. 708, 715, 541 S.E.2d 857, 861 (Ct. App. 2001).  "A landowner owes a licensee a duty to use reasonable care to discover the licensee, to conduct activities on the land so as not to harm the licensee, and to warn the licensee of any concealed dangerous conditions or activities." *Landry v. Hilton Head Plantation Prop. Owners Ass'n, Inc.*, 317 S.C. 200, 203, 452 S.E.2d 619, 621 (Ct. App. 1994).  "Unlike a licensee, an invitee enters the premises with the implied assurance of preparation and reasonable care for his protection and safety while he is there."  *Id.* (quoting *Bryant v. City of North Charleston*, 304 S.C. 123, 128, 403 S.E.2d 159, 161 (Ct. App. 1991)).  "A landowner owes an invitee a duty of due care to discover risks and to warn of or eliminate foreseeable unreasonable risks."  *Id.*

A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent.  *Neil v. Byrum*, 288 S.C. 472, 473, 343 S.E.2d 615, 616 (1986).  "When a licensee enters onto the property of another, the primary benefit is to the licensee, not the property owner." *Hoover v. Broome*, 324 S.C. 531, 535, 479 S.E.2d 62, 64 (Ct. App. 1996).  "A licensee is a person whose presence is tolerated, a person not necessarily invited on the premises, but one who is privileged to enter or remain on the premises only by the property owner's express or implied consent."  *Sims*, 343 S.C. at 720, 541 S.E.2d at 863-64.

By contrast, an invitee is a person who enters onto the property of another "by express or implied invitation, his entry is connected with the owner's business or with an activity the owner conducts or permits to be conducted on his land, and there is a mutuality of benefit or a benefit to the owner."  *Id.* at 716-17, 541 S.E.2d at 862 (quoting 62 Am.Jur.2d *Premises Liability* § 87 (1990)).  "The law recognizes two types of invitees: the public invitee and the business visitor."  *Id.* at 717, 541 S.E.2d at 862.  "A public invitee is one who is invited to enter or remain on the land as a member of the public for a purpose for which the land is held open

to the public." *Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 441, 494 S.E.2d 827, 831 (Ct. App. 1997). In contrast, a business visitor is an invitee whose purpose for entering the property is either directly or indirectly connected with the purpose for which the property owner uses the land. *Sims*, 343 S.C. at 717, 541 S.E.2d at 862.

> [T]he class of persons qualifying as business visitors is not limited to those coming upon the land for a purpose directly or indirectly connected with the business conducted thereon by the possessor, but includes as well those coming upon the land for a purpose connected with their own business, which itself is directly or indirectly connected with a purpose for which the possessor uses the land.

*Singleton*, 377 S.C. at 199, 659 S.E.2d at 203-04 (quoting 62 Am.Jur.2d *Premises Liability* § 88 (1990)). "The basic distinction between a licensee and an invitee is that an invitee confers a benefit on the landowner." *Landry*, 317 S.C. at 204, 452 S.E.2d at 621.

The circuit court concluded LeFont was a licensee as a matter of law and not an invitee because: (1) "the [C]onvention [C]enter leases to somebody for their benefit, and the benefit is certainly indirectly;" and (2) "because they don't control who comes or goes or who's asked to come or go."

LeFont argues the circuit court erred in granting a directed verdict on the ground that she was a licensee at the time of her injury because there was sufficient evidence in the record for the jury to infer that she was an invitee. Specifically, LeFont contends (1) her entry onto the City's premises was to her benefit and that of the City; (2) she entered the City's premises, and specifically the parking lot, through an express invitation and an implied invitation; and (3) she entered the City's premises for her own business connected to the purpose for which the Convention Center was held open.

We agree with LeFont. We find sufficient evidence was presented for the jury to infer that LeFont was an invitee.

First, the record contains sufficient evidence for the jury to infer that LeFont provided a benefit to the City. LeFont testified she and her husband paid between $1,800 and $2,500 to HT Hackney, the distributor hosting the trade show, as

vendors to attend the trade show in August 2014. In turn, Susan Skellett, the Convention Center's convention services manager, testified HT Hackney paid to lease Convention Center space to host its show.

Second, the record contains sufficient evidence for the jury to infer that LeFont was on the Convention Center premises as a result of an express and implied invitation. Skellett testified vendors are invited to the Convention Center to display their goods. In addition, LeFont also testified the security guard working in the employee parking lot opened the gate for her to enter and gave her permission to park.

Finally, the record contains sufficient evidence for the jury to infer that LeFont's entry onto the Convention Center premises was for business connected to the purpose for which the Convention Center was held open. The Convention Center was open for a trade show. LeFont and her husband were vendors participating in the trade show.

"Ordinarily, when conflicting evidence is presented as to whether someone is a licensee or invitee, the question becomes one of fact and as such, is properly left to the jury." *Vogt v. Murraywood Swim & Racquet Club*, 357 S.C. 506, 511, 593 S.E.2d 617, 620 (Ct. App. 2004). Based on the record in this case, we find a conflict in the evidence exists regarding LeFont's status at the time of the incident. Accordingly, we reverse the circuit court's finding that LeFont was a licensee.[5]

## III.   Notice

LeFont argues the circuit court erred in finding the record contains no evidence that the City had constructive notice of the pothole. We agree.

> To recover damages for injuries caused by a dangerous or defective condition on a defendant's premises, a plaintiff 'must show either (1) that the injury was caused by a specific act of the respondent which created the

---

[5] Based upon our reversal of the circuit court's finding that LeFont was a licensee, the court need not address LeFont's second argument on appeal that the circuit court erred in finding the City did not breach its duty of care. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

dangerous condition; or (2) that the respondent had actual or constructive knowledge of the dangerous condition and failed to remedy it.'

*Pringle v. SLR, Inc. of Summerton*, 382 S.C. 397, 404, 675 S.E.2d 783, 787 (Ct. App. 2009) (quoting *Anderson v. Racetrac Petroleum, Inc.*, 296 S.C. 204, 205, 371 S.E.2d 530, 531 (1988)).

Here, the circuit court held there was no evidence the City had constructive notice of the pothole in the Convention Center parking lot. "Constructive notice is a legal inference, which substitutes for actual notice." *Major v. City of Hartsville*, 410 S.C. 1, 3, 763 S.E.2d 348, 350 (2014). "Constructive notice . . . is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts." *Strother v. Lexington Cty. Recreation Comm'n*, 332 S.C. 54, 63 n.6, 504 S.E.2d 117, 122 n.6 (1998).

LeFont asserts conflicting evidence was presented as to whether the City had constructive notice of the pothole. Conversely, the City maintains there is no evidence in the record that the pothole existed at any time prior to the date of LeFont's injury.

Viewing the evidence in the light most favorable to LeFont, we find the record contains sufficient evidence for the jury to infer that the City had constructive notice of the pothole. Dr. Bryan Durig testified at trial as an expert in the field of mechanical engineering. Dr. Durig testified the employee parking lot where LeFont's injury occurred is in a loading zone and receives frequent traffic not only from employees and vendors, but also from tractor trailers carrying heavy loads that cause wear and tear on the parking surface. Dr. Durig further testified the hole was in violation of the International Property Maintenance Code that was adopted by the City and requires parking lots to be maintained free from hazardous conditions. In addition, the record contains testimony that Convention Center employees were regularly in the parking lot and could have detected the hole and that the City had procedures in place for fixing holes. Dr. Durig noted the hole contained dirt and debris—evidence from which the jury could infer the hole had existed long enough for the City's employees to discover it.

In light of the foregoing, we find there was sufficient evidence of constructive notice to allow the jury to resolve the question of the City's liability. Accordingly, we reverse the circuit court's grant of a directed verdict.

**CONCLUSION**

We reverse the circuit court's grant of a directed verdict to the City and remand for trial.

**REVERSED AND REMANDED.**

**GEATHERS and HEWITT, JJ., concur.**